**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Alfredo PEREZ, Defendant–Appellant.**

**No. 88–3409.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 13, 1989.

Decided March 29, 1989.

Kathleen Brinkman, Asst. U.S. Atty. (argued), Cincinnati, Ohio, for U.S.

Martin S. Pinales (argued), Cincinnati, Ohio, for Alfredo Perez.

Before KEITH, MARTIN and RYAN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Alfredo Perez appeals (1) the district court's denial of his motion to strike and/or declare a mistrial for the testimony of a witness referring partially to a drug related incident prior to the time period listed in the indictment; (2) the refusal of the district court to declare the sentencing guidelines unconstitutional; and (3) the placement by district court of Perez in category 30 under the sentencing guidelines and charging Perez with the cost of incarceration. We affirm the district court.

On December 16, 1987, a federal grand jury returned a four-count indictment against Perez. Perez was charged with participation in a conspiracy to possess with intent to distribute and to distribute cocaine from an unknown time prior to May, 1987 up to December 3, 1987, in violation of 21 U.S.C. § 846. Perez was charged with distributing about 280.7 grams of cocaine on December 3, 1987 in violation of 21 U.S.C. § 841(a)(1) and with possession of about 507.8 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Finally, Perez was charged with the intent to carry on a business enterprise involving the possession and distribution of cocaine and traveling from Florida to the Southern District of Ohio in furtherance of that enterprise in violation of 18 U.S.C. § 1952(a)(3). On February 23, 1988, a jury convicted Perez on all four counts and specifically found that Perez possessed with intent to distribute 500 grams or more of cocaine.

On May 5, 1988, Perez was sentenced by a district judge who applied the sentencing guidelines. Perez filed a motion asking the court to declare the sentencing guidelines unconstitutional. The district court has not expressly ruled on that motion. The district court sentenced Perez on the consolidated charges to 97 months and 4 years of supervised release, a fine of $26,843.70, and a $50.00 assessment. The district court found that level 30 of the sentencing guidelines applied to Perez.

On December 3, 1987, the Drug Enforcement Agency, the FBI, and the Cincinnati Police Department used an informant to set up an undercover purchase of cocaine from a third party, Alvin Pettijohn, in Cincinnati, Ohio. DEA special agent, Kenneth Morrow, posed as the buyer of 10 ounces of cocaine to be purchased from Pettijohn for $10,000.00. At 2:05 p.m., special agent Morrow saw Perez come out of Pettijohn's residence, enter a white compact car which had pulled into Pettijohn's driveway earlier, drive the car into Pettijohn's garage, and close the garage door. At 3:00 p.m., Pettijohn came to a residence across the street where special agent Morrow and an informant were waiting and pulled a bag of about 10 ounces of cocaine out of his pocket and put it on the kitchen counter before agent Morrow. Agent Morrow told Pettijohn that he wanted to weigh the cocaine but he had to go to his car to get his scales. Before Agent Morrow left to get the scales, he gave an arrest signal by means of a body transmitter he was wearing. Upon entering the Pettijohn residence, FBI special agent Kenneth McCabe confronted defendant Perez as he stood at the kitchen table shaking cocaine from a baggie into a yellow mixing bowl. Perez was placed under arrest. On the kitchen table, McCabe saw remmants of aerosal cans.

Alvin Pettijohn testified at trial regarding what happened in the Pettijohn residence after Perez arrived and before the delivery of the cocaine to agent Morrow. He testified that the sample and 10 ounces of cocaine which he delivered to agent Morrow had come from Perez. Perez had transported the cocaine in aerosal cans. Pettijohn also testified that he had made several calls to Miami to arrange the delivery of the cocaine by Perez on December 3, 1987. Perez had supplied cocaine to Pettijohn approximately seven other times between April and December 3, 1987. On each occasion Perez had put the cocaine in aerosal cans in order to deliver it. Perez had offered to supply a kilogram of cocaine to Pettijohn for $21,000.00 cash. Perez had

delivered 5–7 ounces on each occasion, charging $1,300.00 per ounce at first and $850.00 per ounce in December, 1987.

At trial, Greta Brooks testified before the jury that she had met Perez in Louisville, Kentucky, in September or October of 1986 through her boyfriend "Omar," a cocaine dealer. Perez was with a Cuban named "Bernie". The three men came to Greta Brooks' house and met in the basement for 10 to 15 minutes. When the prosecutor asked Greta Brooks at trial whether Omar had told her why he had brought the two men to her house, Perez objected and the court did not permit Greta Brooks to answer. The district court sustained Perez's objection to the remainder of Greta Brooks' testimony about what she saw and heard that week-end in 1986 as not relevant to the time period involved in this case from January, 1987 to December 3, 1987. Perez did not move to strike Greta Brooks' testimony at the time the jury heard it. Perez did ask the court just before closing arguments began to strike the Greta Brooks testimony. The court denied the motion. Perez asked the court just after closing arguments again to strike Greta Brooks testimony and to declare a mistrial because the prosecutor had referred to Greta Brooks' testimony in closing. The court denied both motions.

■ Perez argues that the trial court committed prejudicial error when it denied his motion to strike and/or grant a mistrial for the testimony of Greta Brooks. Perez claims that the testimony by Greta Brooks was inflamatory and inadmissible evidence.

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Fed.R.Ev. 103. We must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. Fed.R.Civ.P. 61; *Logan v. Hudson,* 865 F.2d 789, 790 (6th Cir.1989). In the instant case, no substantial right of Perez has been affected. More than sufficient evidence exists in the record as a whole, apart from Greta Brooks' testimony, to convict Perez under all four counts of the indictment. When special

agent Morrow and the FBI agents entered Alvin Pettijohn's apartment on December 3, 1987, they found Perez pouring cocaine into a bowl. Perez was not unfairly prejudiced by Greta Brooks' testimony that he met with a cocaine dealer in Louisville on an earlier occasion in 1986.

■ Perez claims that the district court committed error by not declaring the sentencing guidelines unconstitutional. This claim is now without merit. The Supreme Court upheld the constitutionality of the sentencing guidelines recently in *Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The sentencing guidelines promulgated by the United States Sentencing Commission under the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq. (1982 ed., Supp. IV), and 28 U.S.C. §§ 991–998 (1982 ed., Supp. IV) are now binding upon us. The Act, however, preserves for the district judge the discretion to depart from the guidelines applicable to a particular case if the judge finds an aggravating or mitigating factor present that the Commission did not adequately consider when formulating the guidelines. *Mistretta v. United States,* —— U.S. ——, ——, 109 S.Ct. 647, 652–53, 102 L.Ed.2d 714 (1989). The Act requires the court to state "the specific reason" for imposing a sentence different from that described in the guidelines. 18 U.S.C. § 3553(c). While Congress was not precise as to the form this would take, a short clear written statement or a reasoned statement from the bench will suffice. The Act then authorizes only limited appellate review of the sentence. 18 U.S.C. §§ 3742(a) and (b). Review is governed by §§ 3742(d) and (e) of the Act. We must "give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous." § 3742(d). Again, Congress was less than precise, but we must assume that they chose "clearly erroneous" with care. Because "clearly erroneous" has been widely examined and defined, we have a standard for what is and what is not clearly erroneous. We

believe that the best definition of the term "clearly erroneous" is found in *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir.1988), where we stated:

'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'

*Archer* at 499 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)); *United States v. Hessling*, 845 F.2d 617, 619 (6th Cir.1988). Applying *Archer* in the instant case, we find no error.

■ Perez argues that the district court improperly applied the sentencing guidelines. 18 U.S.C. § 3742(a)(2). He objects to the district court's selection of level 28 as the appropriate base level for the amount of cocaine involved and the court's raising the level to 30 because of Perez's role in the offense. The district court did not incorrectly apply the sentencing guidelines to Perez and its findings were not clearly erroneous. 18 U.S.C. § 3742(d). The district court properly set the base level at 28 given the amount of cocaine involved. Under the sentencing guidelines, the amount of the drug being negotiated, even in an uncompleted distribution, shall be used to calculate the total mount in order to determine the base level. Also under the sentencing guidelines, when a defendant is convicted under more than one count, the counts may be grouped together for the purposes of determining sentencing. The district court properly adjusted Perez's base level 28 upward to level 30. Under the sentencing guidelines, if the defendant is an organizer, leader, manager or supervisor in any criminal activity the district court may increase the offense level by two levels.

■ With regard to the fine imposed by the district court, Perez does not dispute the calculation of the total fine but argues that he has insufficient assets to pay the fines. However, his current assets do not determine whether he shall be relieved of the obligation to pay a total fine mandated under the sentencing guidelines. The defendant has the burden of establishing that he is not able and even with the use of a reasonable installment schedule is not likely to become able to pay all or part of the fine. Perez failed to present any evidence before the district court which showed that he was not likely to become able to pay all or part of the fine upon his release.

Since we have determined that Perez's sentence was not imposed in violation of the law or as a result of an incorrect application of the sentencing guidelines; that the sentence was not outside the range of applicable sentencing guidelines and unreasonable; and that it was not imposed for an offense for which there was no applicable sentencing guidelines and plainly unreasonable, under 18 U.S.C. § 3742(e)(3), we must affirm the sentence.

Judgment affirmed.