888 F.2d 128
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bruce PITMAN, Defendant-Appellant.
 No. 89-1264.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1989.
 
 Before KEITH, NATHANIEL R. JONES and RALPH B. GUY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant Bruce Pitman ("Pitman") appeals from the judgment of the district court finding him guilty of possession of a firearm by a felon. Pitman contends that after receiving his guilty plea, the district court abused its discretion by departing from the Sentencing Guidelines ("Guidelines") and sentencing him to 42 months imprisonment. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 On June 24, 1988, Pitman was charged in a two count indictment with possession of a firearm by a felon, and with possession of marijuana in violation of 18 U.S.C. Sec. 922(g) and 21 U.S.C. Sec. 844(a), respectively. On August 26, 1988, Pitman pled guilty to count one as part of a plea agreement pursuant to Fed.R.Crim.P. 11. In exchange for the guilty plea, the government agreed to dismiss the possession of marijuana charge.
 
 
 3
 On November 29, 1988, the government filed a Motion to Depart from the Sentencing Guidelines. The government alleged that under the Guidelines, Pitman had an offense level of seven and a criminal history category of III making the applicable sentencing range 4-10 months imprisonment. Based on the underlying facts of the offense and defendant's prior criminal history, the government believed that such a sentence would be woefully inadequate. Under Section 4A1.3, the Guidelines acknowledge that an upward departure may be appropriate under certain circumstances. U.S. Sentencing Commission, Sentencing Guidelines Manual Sec. 4A1.3 (Oct.1987). Furthermore, Section 5K2.0 states that departure may be appropriate "if the court finds 'that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Guidelines in formulating the guidelines." Id. at Sec. 5K2.0, quoting 18 U.S.C. Sec. 3553(b) (Supp.1989). Therefore, the government urged the court to impose the statutory maximum of 60 months imprisonment. Pitman's counsel objected arguing that the Guidelines' range was appropriate.
 
 II.
 
 4
 On February 15, 1989, prior to imposing sentence, an evidentiary hearing was held on controverted items in defendant's presentence report. At the hearing, the government called several police witnesses. Lieutenant Thomas Curtis of the Michigan State Police assigned to F.A.N.G.,[1] testified that on March 8, 1988, a search warrant was executed at defendant's home 13550 Horrell Road, Fenton, Michigan. During the search, a loaded Browning Auto 5, 12 gauge shotgun was seized. A tin box located near the firearm containing $99,950 in cash and approximately one ounce of marijuana were also seized. Miscellaneous drug paraphernalia were found in the home. Lieutenant Curtis testified that Pitman gave conflicting explanations for the money. Initially, Pitman claimed he did not know whose money it was; then a friend had given it to him and still later he admitted the money was his. The other police officers testified that they received information from confidential sources, individuals cooperating with the government or anonymous tippers that Pitman was a marijuana dealer.
 
 
 5
 At the hearing, defense counsel argued that the evidence presented was insufficient to find either that Pitman was a marijuana dealer or that the money found in the home was drug proceeds. Specifically, defense counsel argued that most of the information alleging that defendant was a marijuana dealer was based on hearsay and therefore insufficient to support the government's contentions.
 
 
 6
 The trial court found that the information in the presentence report was accurate, and that a departure from the Guidelines was warranted. A sentence of 42 months was imposed followed by two years of supervised release.[2] The court's justification for the departure follows:
 
 
 7
 THE COURT: All right. The Probation Department has added in its report that there are certain factors that may warrant departure. These are as stated by the Probation Department.
 
 
 8
 There are factors in this case that would warrant a departure from the guidelines. It is apparent from information supplied to the Probation Department that the defendant has been involved in narcotics trafficking. $99,950 in cash was confiscated by authorities. The evidence suggests that this money was gained through illegal narcotics transactions. The defendant has provided the Probation Department with no explanation as to why he was in possession of $99,950 in cash.
 
 
 9
 An additional reason for departure would be based on the fact that the defendant's prior criminal history is not adequately taken into account by the guidelines. There are four previous convictions on the defendant's record which added no additional points to his criminal history score. If those convictions had occurred within 10 years of the current offense, seven additional criminal history points would have been assessed. This would have placed the defendant in a 6 criminal history category and authorized a sentence of 15 to 21 months. Section 4(a)1.3 of the guidelines does indicate that if the criminal history category does not adequately reflect the seriousness of the defendant's past conduct or the likelihood that the defendant will commit other crimes, the Court may consider imposing a range departing from the otherwise applicable guideline range.
 
 
 10
 I find that the comments of the Probation Department are appropriate and I would adopt them.
 
 
 11
 Transcript of February 15, 1989 ("Tr.") at 122-23.
 
 
 12
 On February 23, 1989, Pitman filed an appeal with this court.
 
 III.
 
 13
 Pitman argues that the trial court abused its discretion in finding that the $99,950 located near the firearm was drug related. He alleges that the facts presented at the hearing were unreliable and therefore insufficient to establish that the government met its burden of proof. For defendant to prevail on this theory, he must establish that the trial court's findings of fact were clearly erroneous. United States v. Perez, 871 F.2d 45, 47 (6th Cir.1989); 18 U.S.C. Sec. 3742. See also, United States v. Velasquez-Mercado, 872 F.2d 632 (5th Cir.1989).
 
 
 14
 From the totality of the evidence presented, however, the trial court's findings were not clearly erroneous. The firearm, which was the basis for the felon in possession conviction, was located near the $99,950. A reasonable inference was drawn that the firearm was there to protect the money and drugs found in the home. The arresting officer testified that Pitman gave three conflicting explanations regarding the money. Within the last ten years, Pitman's occasional employment[3] could not have yielded income even close to the amount of money found in his home. Furthermore, several parties corroborated the conclusion that defendant was involved in drug trafficking.
 
 
 15
 The testimony presented established by a preponderance of the evidence not only that Pitman was involved in drug trafficking but also that the $99,950 was drug related. Even though some of the testimony involved hearsay, appellant readily acknowledged that hearsay is admissible. Fed.R.Evid. 804(b)(5) provides that in certain circumstances where the guarantees of trustworthiness are high or the evidence is sufficiently corroborated or where the evidence is of a kind where cross-examination would not enhance reliability, hearsay is admissible. J. Weinstein & M. Berger, Weinstein's Evidence, p 804(b)(5) (1987).
 
 
 16
 The hearsay testimony presented in this case was sufficiently corroborated by the various statements from several parties combined with the presence of the marijuana, the gun and the $99,950 in cash. The testimony was further corroborated as Pitman had neither a stable source of income nor an explanation for the money. Accordingly, the district court did not abuse its discretion in finding that the money was drug related and that defendant was involved in drug trafficking.
 
 IV.
 
 17
 Pitman also alleged that the district court abused its discretion by finding that an upward departure from the Guidelines was warranted. Pitman submits that because the facts underlying the court's findings were unreliable, the departure was unreasonable and the extent of the departure was unjustified.
 
 
 18
 In United States v. Perez, 871 F.2d 45 (6th Cir.1989), we held that given certain circumstances, the trial court may depart from the Guidelines:
 
 
 19
 The [Sentencing Reform Act of 1984], however, preserved for the district judge the discretion to depart from the guideline applicable to a particular case if the judge finds an aggravating or mitigating factor present that the Commission did not adequately consider when formulating the guidelines. Mistretta v. United States, --- U.S. ----, ----, 109 S.Ct. 647, 652-53 (1989). The Act requires the court to state 'the specific reason' for imposing a sentence different from that described in the guidelines. 18 U.S.C. Sec. 3553(c). While Congress was not precise as to the form this would take, a short clear (sic) written statement or a reasoned statement from the bench will suffice. The Act then authorizes only limited appellate review of the sentence. 18 U.S.C. Secs. 3742(a) and (b). Review is governed by Secs. 3742(d) and (e) of the Act. We must 'give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous.' Sec. 3742(d).
 
 
 20
 Perez, 871 F.2d at 47. (emphasis added).
 
 
 21
 Initially, we must consider whether the district court correctly determined the recommended range under the Guidelines. The offense level for a violation of 18 U.S.C. Sec. 922(g) is found in Sec. 2K2.1 of the Guidelines which provides a base offense level of nine. Pitman readily admitted his involvement in this offense; therefore under Sec. 3E1.1(a) his offense level is reduced two levels giving him a total offense level of seven. As for his criminal history, most of defendant's offenses occurred more than ten years ago and thus under the Guidelines cannot be assessed. Those convictions less than ten years old yielded a total of five points, placing Pitman in a criminal history category of III. The intersection of the total offense level, nine, and the criminal history category, III, on the Sentencing Table shows that the recommended sentence for Pitman was 4-10 months--the sentence the district court concluded the Guidelines recommended.
 
 
 22
 The district court, however, also concluded that aggravating factors existed in Pitman's case to warrant an upward departure from the Guidelines. As discussed above, the court did not abuse its discretion in concluding that the money was drug related and that Pitman was involved in drug trafficking operations. The firearm was situated to protect the money. These circumstances alone justified a departure from the Guidelines.
 
 
 23
 Moreover, the presentence report recommended that a departure from the Guidelines was warranted as the evidence strongly suggested that the money was gained through illegal narcotics transactions and that defendant's prior criminal history was not adequately taken into account. Pitman's criminal history depicts a life of extensive substance and alcohol abuse. He did not receive any points for convictions more than ten years old. If those convictions had occurred within ten years of the current offense, seven points would have been added to his criminal history record. Pitman's criminal history indicates that he is a consistent repeat offender.[4]
 
 
 24
 The district court correctly determined that Pitman's crime carried an offense level of seven. It is due to the aggravating circumstances surrounding Pitman's conviction, that the district court appropriately departed from the Guidelines and sentenced him to 42 months. Under the totality of the circumstances, the district court did not abuse its discretion and an upward departure from the Guidelines was warranted.
 
 
 25
 For all of the foregoing reasons, we AFFIRM.
 
 
 
 [1]
 Flint Area Narcotics Group is a special unit of the Michigan State Police Department
 
 
 [2]
 Pitman was also ordered to pay the United States a total of $7,050 which included a $5,000 fine, a $2,000 cost for the supervised release and a $50 special assessment fee
 
 
 [3]
 The presentence report states that from 1977 through 1978, defendant worked at Chevrolet Metal Fabrication and from 1981 through 1984, he owned a Mobil Gas Station. Since 1978, defendant sporadically has been involved in real estate ventures whereby he buys homes, remodels them, and then sells them at a profit. He failed to give the Probation Department any indication as to how much money he earned from buying and selling property
 
 
 [4]
 The presentence report indicates that on January 23, 1987, Pitman was arrested by Flint Township Police on charges of assault with intent to murder. In this incident, defendant fired a shotgun at a car owned by Beverly Foguth, his fiancee of several years. He was released pending further investigation. A warrant was later prepared charging Pitman with assault with a deadly or dangerous weapon and possession of a firearm while committing or attempting to commit a felony. The warrant was never issued because Ms. Foguth refused to sign it