922 F.2d 842
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lehmon MOORE, Defendant-Appellant.
 No. 90-5635.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1991.
 
 Before BOYCE F. MARTIN, Jr. and DAVID A. NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendant, Lehmon Moore, appeals his conviction for possession with intent to distribute cocaine and his sentence of seventy-eight months. Moore contends that the district court committed several errors on both evidentiary and sentencing guideline matters. Because we find no reversible error, we AFFIRM the district court.
 
 
 2
 On February 6, 1990, a three count indictment was filed against Moore. Count one charged Moore with possession with the intent to distribute cocaine hydrochloride. Count two charged Moore with possession with intent to distribute five or more grams of crack cocaine. Count three charged Moore with traveling in interstate commerce to facilitate a "business enterprise" designed to distribute cocaine hydrochloride. This three count indictment arose from events that occurred in the Chattanooga airport.
 
 
 3
 On November 22, 1989, Lt. Ronald Edmundson observed Moore purchase a one way ticket from Chattanooga to New York City, paying approximately $300 in small bills. Because Edmundson knew that Moore was suspected to be a drug trafficker, he monitored return flights from New York City for Moore's return. On December 1, 1989, Edmundson learned that someone using one of Moore's aliases, Raymond Moon, was on a flight from New York City. Edmundson contacted Detective George Nadeau of the Chattanooga Police Department to help in the investigation. Nadeau had arrested Moore on a previous occasion.
 
 
 4
 Edmundson and Nadeau positioned themselves at the gate where the flight from New York City would deplane. Immediately upon Moore's leaving the plane, Detective Nadeau confronted him. Moore immediately turned around, reached under his sweater, and dropped something around a corner into the jetway. When Lt. Edmundson looked around the corner just a few seconds later, a bag containing cocaine hydrochloride was discovered. Moore was then arrested and crack cocaine was discovered in his sock.
 
 
 5
 At the trial, Moore maintained that he did not possess the cocaine hydrochloride found around the corner in the airport. While Moore conceded that he possessed the crack in his sock, he maintained that he was an addict, not a dealer.
 
 I.
 
 6
 Moore alleges that the evidence was not sufficient to convict on count one. Count one involved the possession of the bag of cocaine hydrochloride found around the corner from the arrest. Moore insists that this quantity of drugs was not his.
 
 
 7
 In a criminal case with a jury trial, the standard of review for claims of insufficient evidence is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Ellzey, 874 F.2d 324, 327 (6th Cir.1989).
 
 
 8
 There is considerable evidence connecting Moore to the bag of cocaine hydrochloride. Moore traveled under an assumed name and paid cash for his airline ticket to New York. When confronted with a police officer in the Chattanooga airport, Moore turned around, reached under his sweater, and dropped something around the corner. The bag of cocaine hydrochloride was discovered around this corner. There is sufficient evidence connecting Moore to the bag of cocaine hydrochloride to allow the jury verdict to stand.
 
 II.
 
 9
 Moore also contends that the district court erred when it allowed testimony concerning his possession of a 1986 BMW 535i. Moore was arrested while driving the car, and cocaine hydrochloride was found in it. Moore denied ownership of the car, and no individual has claimed the car. Testimony at trial placed the value at $50,000.
 
 
 10
 Moore claims that the evidence of his possession of the car should have been excluded under Rule 402 and Rule 403.[1] Rule 402 states that "[e]vidence which is not relevant is not admissible." Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,...." The major factual issue in dispute at the trial was Moore's possession of the cocaine hydrochloride discovered in the jetway. Moore maintains that possession of a BMW on an earlier occasion is not relevant to the issue of possession and that it was highly prejudicial.
 
 
 11
 A district court's decision to admit evidence over objection based on Rule 402 or Rule 403 will be upheld unless it was an abuse of discretion. United States v. Schrock, 855 F.2d 327, 333 (6th Cir.1988). Moore's defense during trial was to insist that he was a crack addict, not a dealer. The government, by introducing the value of the car, attempted to show that an unemployed former postal worker was driving a car he could not afford. The evidence is relevant to the issue of whether the defendant had the intent to deal drugs.
 
 
 12
 Unfair prejudice may arise if facts are likely to arouse jury hostility or sympathy. Access to an expensive car, according to Moore, may lead to jury jealousy. The danger of jury jealousy in this context, however, is small. Accordingly, the district court did not abuse its discretion in allowing admission of the evidence.
 
 III.
 
 13
 Moore maintains that he should have been granted a two point reduction in his sentence for acceptance of responsibility. This is a factual determination by the district court that is reviewed under a clearly erroneous standard. United States v. Wilson, 878 F.2d 921 (6th Cir.1989). The United States Sentencing Guidelines Sec. 3E1.1 states:
 
 
 14
 If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by two levels.
 
 
 15
 Application Note # 11 to section 3E1.1 provides several factors that suggest an acceptance of responsibility. None seem to apply in this case and several factors are opposed to his being awarded a reduction for acceptance of responsibility. For example, one factor is "voluntary and truthful admission to authorities of involvement in the offense and related conduct; ...." Moore has never admitted that he possessed drugs with the intent to distribute, but he was convicted of that offense. Furthermore, the defendant disputes the contention that he possessed the package of cocaine hydrochloride found in the jetway. Even though Moore concedes that he possessed the crack found in his sock, he still maintains his innocence on several other counts. The district court's determination that Moore did not accept responsibility, therefore, was not clearly erroneous.
 
 IV.
 
 16
 Moore maintains that the quantity of drugs involved in "unrelated" state cases should not be considered in sentencing. Moore's offense level is 28. The offense level 28 was established by Moore's possession of 21.045 grams of crack found in his sock in the airport. Moore concedes that no other drug possession need be shown to reach offense level 28. Any additional drugs that have been tied to the defendant would be insufficient to reach the next offense level. The government contends that it is unnecessary to reach the issue of whether the district court should include quantities outside the indictment because the defendant can not show prejudice.
 
 
 17
 When Moore was arrested in the airport, he was out on bond for three separate drug offenses. Moore was arrested on February 4, 1989 by state police and 249 grams of cocaine hydrochloride and 3.5 grams of crack was discovered in his possession. On April 20, 1989, Moore was arrested and discovered to be carrying 27.8 grams of cocaine hydrochloride. On June 3, 1989, Moore was arrested for failing to appear on the previous charges. While in custody, he attempted to swallow some crack. Law enforcement officers recovered .71 grams of crack during this arrest. The presentence report declared that the drugs found during the three prior arrests could be included as part of a common plan. See U.S.S.G. Sec. 1B1.3(a). The district court accepted this conclusion.
 
 
 18
 In United States v. Turner, 881 F.2d 684 (9th Cir.) cert. denied 110 S.Ct. 199 (1989), the court refused to resolve a dispute as to the appropriate offense guideline to use. Because overlapping guideline ranges and the district court statement that it would have imposed the same sentence regardless of which sentencing guideline applied, the Ninth Circuit refused to examine the issue. Since the defendant could not show prejudice, the Ninth Circuit held, the issue need not be addressed. See also United States v. Ligon, 716 F.Supp. 1009, 1021 (W.D.Ky.1989).
 
 
 19
 The issue of aggregation of the drug quantities need not be addressed by this court. Even if Moore were successful with this claim, it would not affect his sentence, his offense level, or result in a change in his status in any manner.
 
 V.
 
 20
 Moore objects to the order requiring him to pay a fine in this case. The district court imposed a fine in the amount of $94,383.90 for the cost of incarceration and $4,399.68 for the cost of probation. A fine is inappropriate, the defendant alleges, because he is indigent. U.S.S.G. Sec. 5E1.2(f) allows the district court to decrease a fine if the defendant is unable to pay or it would unduly burden the defendant's dependents. The defendant, however, has the burden of establishing an inability to pay. United States v. Perez, 871 F.2d 45 (6th Cir.) cert. denied 109 S.Ct. 3227 (1989).
 
 
 21
 Moore worked for the United States Post Office for 33 years. He suffered from a work related injury and receives a disability check of $1,607.07 a month. Moore will be incarcerated for seventy-eight months and be on supervised release for four years. Since the disability payments received during his incarceration will be sufficient to pay the fine, Moore has the "ability" to pay the fine by turning these payments over to the government.[2]
 
 
 22
 To avoid the fine, therefore, the defendant must show that the disability payments are needed to support his dependents. According to the presentence report, two of Moore's children still live with the mother at the family home, but the youngest is 26 years old. From this record, it is unclear if the wife has employment. Since Moore has not shown that the disability payments were necessary to support his family, the district court was correct in imposing the fine.
 
 VI.
 
 23
 There was sufficient evidence to convict the defendant of possession of cocaine hydrochloride. The evidence concerning the BMW was properly admitted as evidence that defendant might be a drug dealer. The district court's determination that Moore had not accepted responsibility was not clearly erroneous. The propriety of the aggregation of drug quantities from prior arrests need not be addressed because a decision will not effect his conviction, his sentence or his offense guideline. Because Moore failed to establish that his dependents required his disability check, the district court was correct in imposing a fine. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The government contends that Moore's objection at trial was inadequate to preserve this issue for appeal, so this court may only review for plain error. See Fed.R.Evid. 103. The defense attorney objected on the basis that there was no showing that Moore owned the car. The district court dealt with the relevance issues when it overruled the objection. Under the circumstances, we will treat the objection as "apparent from the context." Fed.R.Evid. 103(a)(1)
 
 
 [2]
 It is unclear on this record whether Moore's disability payments will be continued or if he is eligible for retirement benefits. Because Moore bears the burden of proof on this issue and no evidence has been introduced to the contrary, we assume that he will continue to receive disability benefits