949 F.2d 397
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Al Walter BOLDEN, Defendant-Appellant.
 No. 91-1298.
 United States Court of Appeals, Sixth Circuit.
 Dec. 5, 1991.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Al Walter Bolden, who pled guilty to two counts of possession of fraudulent identification documents in violation of 18 U.S.C. § 1028 and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), appeals the sentence imposed. The issue on appeal is whether the district court's findings that defendant's operations involved five or more people or were otherwise extensive were clearly erroneous. For the reasons that follow, we affirm.
 
 I.
 
 2
 Defendant Al Walter Bolden was charged in a six-count indictment filed in the Eastern District of Michigan on August 21, 1990. Counts One, Two, and Three charged defendant with possession of fraudulent identification documents in violation of 18 U.S.C. § 1028. Count Four charged defendant with possession of document making implements in violation of 18 U.S.C. § 1028, and Counts Five and Six charged defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On October 25, 1990, defendant pled guilty to Counts One, Three, and Five of the indictment. Thereafter, a presentence investigation report was filed, and defendant filed objections to the report on January 7, 1991. On February 26, 1991, a sentencing hearing was held in which defendant challenged a four-point enhancement under section 3B1.1(a) of the 1989 sentencing guidelines. Defendant presented no witnesses at the sentencing hearing, but the government presented one witness. At the conclusion of the hearing, the district court found that the four-point enhancement applied to defendant's case and sentenced the defendant to 27 months in prison. Defendant now challenges the district court's determination, arguing that the court erroneously considered uncorroborated and unsubstantiated hearsay evidence in violation of his constitutional right of Due Process and in violation of the Confrontation Clause of the Sixth Amendment which resulted in a misapplication of the federal sentencing guidelines. Defendant insists that under the guidelines his range should have been 10-16 months rather than 21-27 months.
 
 
 3
 In October 1988, special agents of the U.S. Secret Service received information from a confidential informant that defendant Bolden was providing major narcotics dealers with counterfeit identification. The agents later learned that defendant also sold false licenses to narcotics dealers for the operation of front businesses, such as beauty salons, from which cocaine was distributed. One such business that operated as a front for drug trafficking was D'Elegant Nail Salon owned by Deborah Dunn, a drug courier, who operated under a fictitious license supplied by the defendant. Secret Service Special Agent Bondy, who testified at the sentencing hearing, observed Jerry Montgomery, a noted drug dealer, in the act of purchasing false documents from defendant on at least one occasion. Mrs. Dunn's drug activities also involved Jerry Montgomery.
 
 
 4
 Also working with Deborah Dunn was Edith Munday. After searching Ms. Munday, Secret Service agents found many false documents manufactured or distributed by defendant. Ms. Munday was also involved in arranging for Jerry Montgomery to purchase false documents from defendant.
 
 
 5
 In 1989 agents arrested four Detroit area printers for manufacturing false identification documents, and each of the printers stated that the main person whom they supplied with false documents was the defendant. Approximately 2,000 documents seized from the printers supported their statements. Of the four print shops in the Detroit area, there were at least two full-time employees at each shop or a total of eight. Additionally, there were at least two print shops outside the State of Michigan which supplied defendant with false documents.
 
 
 6
 Thereafter, arrangements were made for Special Agent Mark Braun, who was acting in an undercover capacity, to buy a packet of false identification documents from defendant Bolden. Agent Bondy monitored an initial meeting between Braun and Bolden and also monitored another actual sale of documents by defendant Bolden.
 
 
 7
 Defendant attempted to sell a packet of false documents to Agent Braun, and also revealed to Braun his method for securing false Michigan driver's licenses. Defendant indicated that he had a couple of employees at the Michigan Secretary of State's office who assisted him in preparing counterfeit documents. The counterfeit Michigan temporary driver's licenses which did not have a picture and other miscellaneous documents were taken to an employee at the Secretary of State's office at a prearranged time. The employee would then take the documents to a supervisor and have them approved as if they were legitimate. Additionally, a driver's examination would be arranged and a genuine Michigan driver's license with a photograph on it but with fraudulent information would be obtained through the Secretary of State's office. Defendant Bolden would sell a package of identification containing the counterfeit documents, including a Social Security card, for $650 to $1,000. In addition to employees at the Secretary of State's office who worked for him, other employees at the office were unknowingly involved in his enterprise.
 
 
 8
 Bolden's counterfeit and false identification business was known as ABC Enterprises. He recruited people to assist him in the sale of the counterfeit documents packages. As earlier stated, documents known to have been manufactured through ABC's operations were found in the possession of Edith Munday who, according to the record, was present for the entire sentencing hearing.
 
 
 9
 Upon receiving information from a confidential informant that defendant used his personal automobile to sell false documents and that he would be returning from Georgia with a large shipment of counterfeit documents, the agents obtained search warrants for the defendant's automobile and home upon his return to Michigan. The searches resulted in the seizure of over 8,000 documents including false driver's licenses, false Social Security cards, and false birth certificates from several states including Michigan, Georgia, Ohio, Illinois, and Tennessee. Many negatives and plates used to produce the documents were also seized.
 
 
 10
 At the sentencing hearing on February 26, 1991, Special Agent Bondy was the only witness who testified. On the basis of his sixteen and one-half years' experience in the Secret Service, he testified that the execution of the search warrants yielded the largest seizure of counterfeit identification documents in the history of the U.S. Secret Service. He also testified as to his direct involvement in seizing the documents from defendant, displayed the seized documents before the district court, and explained their nature, type, and volume. Agent Bondy's testimony established that defendant's operations were "otherwise extensive" as shown by the seized false documents, and he also testified that a minimum of 25 people were involved with defendant in making and selling false identification documents.
 
 
 11
 Defendant Bolden, who presented no witnesses or testimony, challenged the testimony of Special Agent Bondy solely on the basis that some of his testimony included hearsay.
 
 
 12
 At the conclusion of the sentencing hearing, the district court made specific findings on the record as follows: (1) that there were at least four print shops in the State of Michigan that were under the direction or working under the leadership of defendant Bolden; (2) that defendant Bolden was the leader or organizer of the criminal activity and that there was at least one person working for him at each print shop; (3) that there were at least two print shops outside the State of Michigan working under the leadership of the defendant; (4) that there were at least two employees of the Michigan Secretary of State's office assisting defendant; (5) that defendant was offering leadership or direction of Edith Munday; and (6) that including all the people referred to, there were nine people as a part of defendant's organization.
 
 The district court further found:
 
 13
 In addition to that, I find that even if there weren't five people, I find that this organization is included under the terms of "otherwise extensive." And I base that finding on the testimony of the Agent here today, who indicates that there were 8,000 plus documents seized. That these documents had, at one time at least, these original documents had been in several states of the United States. And also based on the testimony of this Agent that this seizure was the largest seizure in the history of the Secret Service, which indicates to me that this is extensive.
 
 
 14
 Accordingly, the district court found that United States Sentencing Guidelines ("U.S.S.G.") § 3B1.1 applied to defendant's case and that a four-point enhancement was proper.
 
 II.
 
 15
 In reviewing a defendant's appeal of an application of the guidelines, pursuant to 18 U.S.C. § 3742(a),
 
 
 16
 [t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
 
 
 17
 18 U.S.C. § 3742(e) (Supp.1989). See also United States v. Perez, 871 F.2d 45, 47 (6th Cir.), cert. denied, 492 U.S. 910 (1989).
 
 
 18
 In this case, the district court held that the four-point enhancement of section 3B1.1 of the 1989 federal sentencing guidelines applied to defendant's guideline calculation. Section 3B1.1 provides in relevant part:
 
 
 19
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 20
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.[1]
 
 
 21
 (Emphasis added). In so ruling, the court based its holding on its findings that at least nine people were part of defendant's organization and that defendant's operations were "otherwise extensive" within the meaning of section 3B1.1(a). In making these findings, the district court relied on the physical evidence seized which was before it, Agent Bondy's first-hand observations, and defendant's admissions to an undercover agent. The district court also considered hearsay testimony from Agent Bondy. Despite the physical and nonhearsay evidence considered by the district court, defendant challenges the district court's findings, arguing that they are based on hearsay evidence in violation of the Sixth Amendment's Confrontation Clause.[2]
 
 
 22
 At the outset it should be noted that although hearsay evidence was introduced at the sentencing hearing in this case,[3] there was ample nonhearsay evidence considered by the district court to support its finding that the four-point enhancement of U.S.S.G. § 3B1.1(a) applied to defendant Bolden's guideline calculation. This evidence consisted of the testimony of Agent Bondy based on his first-hand observations and personal knowledge which was corroborated by the actual physical evidence seized pursuant to the search warrants and presented in open court.
 
 
 23
 Moreover, aside from the number of people involved in defendant Bolden's criminal activity, which pertains to the first prong of section 3B1.1(a), the proof presented at the sentencing hearing clearly showed that the second prong, i.e., "was otherwise extensive," was clearly met. In this connection, the 8,000 plus counterfeit documents, the originals of which had been prepared in several states of the United States, together with Agent Bondy's testimony that this matter involved the largest seizure of false documents in the history of the Secret Service, clearly showed that "the defendant was an organizer or leader of a criminal activity that ... was otherwise extensive...."
 
 
 24
 Finally, in addition to challenging the district court's use of hearsay testimony at the sentencing hearing, defendant claims that his constitutional right of Due Process was violated. We note that in this case, defendant's counsel vigorously cross-examined the government's witness at the sentencing hearing. Defendant also had a copy of the government's sentencing memorandum before the sentencing hearing, and the memorandum specifically named persons alleged by the government to have participated in defendant's operations. Thus, defendant had prior knowledge of the evidence the government intended to use at the sentencing hearing as well as a sufficient opportunity to call rebuttal witnesses if he so chose.
 
 
 25
 In United States v. Agyemang, 876 F.2d 1264, 1270 (7th Cir.1989), the Seventh Circuit ruled that a defendant's constitutional rights were not violated at a sentencing hearing where the defendant had the opportunity to cross-examine the government's witnesses and amply rebut the government's evidence. Therefore, under the facts and circumstances of this case, defendant's claim that his constitutional rights were violated has no merit.
 
 III.
 
 26
 For the reasons stated, the sentence imposed by the district court is AFFIRMED.
 
 
 
 [1]
 Section 3B1.1(a) contains two prongs, i.e., "five or more participants" or "was otherwise extensive." The Supreme Court in Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979), instructed: "In construing a statute we are obliged to give effect, if possible, to every word Congress used.... Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise...."
 
 
 [2]
 From the joint appendix filed in this appeal, we cannot determine whether or not the Confrontation Clause issue was raised in the district court
 
 
 [3]
 In United States v. Silverman, Nos. 90-3205/5733/5816 (6th Cir. Sept. 17, 1991), this court in a majority opinion held that the Confrontation Clause of the Sixth Amendment applies to the determination of disputed facts in adversary sentencing hearings conducted under the United States Sentencing Guidelines, and, therefore, hearsay evidence may not be considered by a court in sentencing a defendant. We note, however, that a petition for en banc consideration of Silverman is now pending