999 F.2d 540
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John W. BURKEY, Defendant-Appellant.
 No. 92-3766.
 United States Court of Appeals, Sixth Circuit.
 July 15, 1993.
 
 Before MARTIN, BOGGS and KRUPANSKY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant, John W. Burkey (defendant-Burkey), appealed the sentence imposed on his guilty plea to possession with intent to distribute marijuana in violation of 21 U.S.C. section 841(a)(1). Specifically, the defendant charged that the district court erred in finding that he distributed an additional 250 pounds of marijuana as relevant conduct, thereby elevating his offense level from 14, the base offense level for distributing 20 pounds of marijuana, to 26, the base offense level for distributing 270 pounds of marijuana. He further asserted that the court erred when it did not reduce his base offense level for acceptance of responsibility.
 
 
 2
 The grand jury returned an indictment on November 26, 1991, charging that the defendant knowingly and intentionally distributed approximately 9,035 grams or twenty pounds of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. section 841(a)(1). Subsequently, the defendant withdrew his plea of not guilty and entered a plea of guilty to the indictment.
 
 
 3
 The Probation Department prepared a presentence report on March 24, 1992, calculating a base offense level of 26, the level applicable for distributing 270 pounds of marijuana, pursuant to United States Sentencing Guideline (U.S.S.G.) section 2D1.1 and the relevant conduct provision, U.S.S.G. section 1B1.3(a)(1)[1]; a two-level enhancement for possession of a dangerous weapon pursuant to U.S.S.G. section 2D1.1(b)(1); and a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. section 3E1.1.
 
 
 4
 The United States objected to the presentence report, arguing that the defendant was not entitled to a two-level reduction for acceptance of responsibility because the defendant failed to admit to the full scope of his actions, i.e., that the defendant had sold controlled substances beyond the single twenty-pound sale of marijuana specified in the indictment. Subsequently, the Probation Department filed a revised presentence report adhering to its original recommendations. In response to the government's objections, the probation officer determined that the defendant was entitled to the two-level reduction for acceptance of responsibility because "he realized his actions were wrong and was remorseful."
 
 
 5
 On April 23, 1992, the defendant filed objections to the presentence report, arguing that the Probation Department incorrectly included the additional 250 pounds of marijuana as relevant conduct when calculating his base offense level. He further objected to the two-level enhancement for possession of a dangerous weapon.
 
 
 6
 The district court conducted an evidentiary hearing on July 9 and 13, 1992. Pursuant to information provided by the Government, Mark Simmons (Simmons), an old college acquaintance of defendant's, cooperated with the Drug Enforcement Agency (DEA) as an informant and engaged in several monitored and tape recorded telephone conversations with the defendant from October 29, 1991 through November 5, 1991. These recordings were admitted into evidence and played at the hearing. In addition to the tape recordings, both the informant and DEA Agent James Hummel (Hummel) testified that during these conversations, the defendant agreed to sell Simmons twenty pounds of marijuana, and that the defendant indicated that future drug transactions could be arranged. Agent Hummel and Simmons testified that during the conversation taped on November 5, 1991, the defendant told Simmons that he had been selling "units" of marijuana for $1600 all day and that he had sold 250 pounds wholesale. The defendant testified at the hearing that these statements were a mere "puffing," and that he wanted to intimidate Simmons so that he would "think twice" before leaving town without paying him for the twenty pounds of marijuana.
 
 
 7
 During a lawful search of the defendant's home on November 5, 1991, DEA agents discovered a document, which Agent Hummel opined was a drug record reflecting quantities and dollar amounts of marijuana sold to distributors. Six duffel bags also were found in the defendant's garage. Each bag contained marijuana residue and was capable of holding 105 pounds of marijuana. Agent Hummel testified that based on his experience, such duffel bags were used to transport and store marijuana.
 
 
 8
 Agents also discovered a money counter and a large sum of currency in defendant's residence. Approximately $4,900 was discovered in an office, and $15,000 was detected during a canine search of the premises in a hole in a wall behind the kitchen cabinets. The defendant testified that the money was from the sale of his home and that he kept the money in the wall because he had lost the keys and combination to his safe.
 
 
 9
 Finally, three firearms were found in the residence. Defendant's employer, John Pavlic (Pavlic), who had purchased the residence from defendant and allowed the defendant to continue to reside there, testified that he owned two of the weapons discovered in defendant's home.
 
 
 10
 In statements made to the probation officer, the defendant admitted that he had sold marijuana a few times while in college, but had not dealt in any drugs since college. He stated that he obtained the marijuana for Simmons out of compassion for his old school friend who had told him that he was in trouble because of some gambling debts in Florida and needed to raise cash quickly. He admitted that he placed the twenty pounds of marijuana in the duffel bags.
 
 
 11
 The court concluded from the evidence that the defendant was responsible for an additional 250 pounds of marijuana under the relevant conduct provision of the Guidelines. Therefore, the total amount of marijuana attributed to the defendant was 122.43 kilograms, resulting in a base offense level of 26. In making its determination, the court relied upon the DEA-monitored tape recordings of the conversations between the defendant and the informant. Specifically, the district court concluded that the defendant was not "puffing" but was trying to convince the informant that he had access to large quantities of drugs and was "really going out of his way to make a ... future customer...." Moreover, the court noted that the language used by the defendant was language commonly used in the drug trade.
 
 
 12
 The district court further referred to the canine-detected currency found in the wall of defendant's residence to support the inclusion of the 250 pounds of marijuana as relevant conduct. The court noted that "the only reasons the dog would go to the money it would seem to me the dog smelled some drugs on the money to find it. That's why it is hidden. You can't just put this kind of money in the bank and say, fine, it is my savings, I would think, not if you were involved in drug trafficking." Thus, the court concluded that
 
 
 13
 [t]hey found money, a large sum of money, they find a money counter, they found these bags that have the residue in them, and we hear testimony of the drug agent as to when these bags are used for commonly in the drug trade, so certainly we have got a number of things to explain.
 
 
 14
 The district court did not enhance defendant's sentence for possession of a firearm and declined to reduce defendant's offense level for acceptance of responsibility. The court noted that the defendant could have received the reduction for acceptance of responsibility if he had kept silent; however, the defendant attempted to explain, "[i]n the sentencing hearing especially, the Court just hasn't bought that."
 
 
 15
 Accordingly, the court determined the defendant's guideline range was 63 to 78 months. Since the defendant had no prior record, the court sentenced him to 63 months, a fine of $12,500, a four year period of supervised release, and a $50 assessment fee. The defendant timely filed a notice of appeal on July 23, 1992.
 
 
 16
 Relevant conduct factors must be proven by a preponderance of the evidence. United States v. Walton, 908 F.2d 1289, 1301 (6th Cir.), cert. denied, 498 U.S. 990 (1990). A district court's decision on the amount of a controlled substance for which a defendant is to be held accountable is a finding of fact and must be accepted by a court of appeals unless clearly erroneous. Id. Moreover, the district court's assessment of witness credibility is evaluated using the clearly erroneous standard of review. United States v. Perez, 871 F.2d 45, 47 (6th Cir.), cert. denied, 492 U.S. 910 (1989).
 
 
 17
 In the instant action, the defendant pleaded guilty to possession with intent to distribute 9,035 grams or 20 pounds of marijuana. Accordingly, section 2D1.1(a)(3) of the 1991 United States Sentencing Guidelines provides that the base offense level must be determined by referring to the Drug Quantity Table set forth in subsection c.[2] Application note 12 of section 2D1.1 states that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See § 1B1.3(a)(2) (Relevant Conduct)."
 
 
 18
 Section 1B1.3(a)(2) of the Guidelines provides that the base offense level where the guideline specifies more than one base offense level, as in drug offenses where the level depends on the quantity of controlled substance involved, shall be determined on the basis of the following:
 
 
 19
 solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.[3]
 
 
 20
 U.S.S.G. § 1B1.3(a)(2). See U.S.S.G. § 1B1.3(a)(2), comment. (n. 2).[4]
 
 
 21
 Moreover, "[t]he law in this circuit is clear that to determine a base offense level, a sentencing court may consider conduct involving the possession and sale of 'uncharged drugs [that] are part of a common scheme or plan.' " United States v. Wilson, 954 F.2d 374, 377 (6th Cir.1992). The issue of whether uncharged drugs are part of a common scheme or plan is a factual finding that will be disturbed only if clearly erroneous. United States v. Miller, 910 F.2d 1321, 1327 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 980 (1991).
 
 
 22
 In the instant action, the defendant argued that the government failed to prove by a preponderance of the evidence that he had recently sold 250 pounds of marijuana. He charged that the court disregarded the evidence presented by him, i.e., that he was merely puffing when he told Simmons that he had "been selling these for sixteen all day long ... I sold two hundred and fifty and I mean wholesale"; that the document found in his house was a score sheet for a game he had been playing with a friend; that the money counter was used for his prior job; and that the canine-detected currency discovered in a hole in the wall was from the sale of his house and was hidden there because he had lost the keys to his safe. However, defendant's argument is primarily directed at the district court's assessment of the witnesses' credibility, which must be accepted by this court as true unless clearly erroneous.
 
 
 23
 A review of the record and testimony at the sentencing hearing disclosed that the district court's credibility assessments and conclusion that the defendant had been involved with an additional 250 pounds were not clearly erroneous. Specifically, the court relied upon the following evidence to support its conclusion that the defendant was involved in an additional 250 pounds of marijuana: the tape recordings of the conversations between the defendant and Simmons, the fact that $15,000 of currency was discovered during a canine search, suggesting that the currency had been near marijuana, the marijuana-tainted duffel bags, and the presence of the money counter. Accordingly, this assignment of error is without merit.
 
 
 24
 The defendant's second assignment of error is equally misconceived. He argued that he accepted responsibility for the allegations in the indictment and should not be denied the two-level reduction because he did not admit his involvement in additional illegal conduct. A defendant is not entitled to a reduction based on acceptance of responsibility as a matter of right. United States v. Lassiter, 929 F.2d 267, 270 (6th Cir.1991). In fact, the defendant has the burden to prove that he has accepted responsibility for the crime committed. Id. Whether a defendant has accepted responsibility is a factual inquiry subject to a clearly erroneous standard of review. Moreover, " '[b]ecause the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area....' " United States v. Clark, 957 F.2d 248, 252 (6th Cir.1992) (quoting United States v. Snyder, 913 F.2d 300, 305 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 709 (1991)).
 
 
 25
 The district court in the instant action did not erroneously conclude that defendant failed to accept responsibility for his actions. A review of the record disclosed that the defendant claimed in statements made to the Probation Department and to the court during the evidentiary hearing that he helped Simmons obtain the twenty pounds of marijuana because Simmons was in trouble, and he wanted to help his friend; that he had not dealt drugs since college; and that the money discovered from the canine search was not drug money but money from the sale of his house.
 
 
 26
 Based upon a review of the record in its entirety and the arguments of counsel, the disposition of the district court is hereby AFFIRMED.
 
 
 
 [1]
 The Probation Department applied the 1987 version of section 1B1.3(a)(1), which stated in pertinent part that
 (a) Unless otherwise specified under the guidelines, conduct and circumstances relevant to the offense of conviction means:
 acts or omissions committed or aided and abetted by the defendant, or by a person for whose conduct the defendant is legally accountable, that (1) are part of the same course of conduct, or a common scheme or plan, as the offense of conviction....
 U.S.S.G. section 1B1.3(a)(1) (1987).
 In 1988, section 1B1.3(a)(1) was amended, and the relevant provision holding the defendant accountable for acts or omissions that were part of the same course of conduct or common scheme is now located at section 1B1.3(a)(2) and provides:
 (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;
 The defendant did not object to the Probation Department's use of the 1987 Guidelines. Notwithstanding, application of the 1991 Guidelines results in the same sentence.
 
 
 [2]
 Pursuant to U.S.S.G. section 2D1.1(c)(15), an offense that involves at least five kilograms but less than 10 kilograms of marijuana has a base offense level of 14. Given a criminal history of I, the sentencing range is 15 to 21 months. Moreover, section 2D1.1(c)(9) provides that an offense that involves at least 100 kilograms but less than 400 kilograms of marijuana has a base offense level of 26, which, given a criminal history of I, results in a sentencing range of 63 to 78 months
 
 
 [3]
 Section 3D1.2(d) deals with grouping of closely-related counts and requires grouping of counts "if the offense level is determined largely on the basis of ... the quantity of a substance involved[.]" Possession with intent to distribute marijuana falls within the purview of section 3D1.2(d)
 
 
 [4]
 Application note 2 to section 1B1.3(a)(2) states in pertinent part that
 [a]pplication of this provision does not require the defendant, in fact, to have been convicted of multiple counts. For example, where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales.