**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**John P. DAVERN, Defendant–Appellant.**

**No. 90–3681.**

United States Court of Appeals,
Sixth Circuit.

Reargued Feb. 12, 1992.

Decided July 21, 1992.

Before: MERRITT, Chief Judge, KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

KENNEDY, Circuit Judge.

This case requires us to decide the Sentencing Guidelines to be applied where the defendant negotiated and paid for a half kilogram of cocaine but actually received only 85 grams. We hold that the amount negotiated for should determine defendant's sentence, and we AFFIRM the District Court.

I.

In November 1989, defendant agreed to purchase 500 grams of cocaine for $10,500 from an undercover FBI drug enforcement agent. The agent actually transferred to defendant a plastic bag weighing 1,070 grams which contained a small plastic bag of cocaine weighing 85 grams enclosed in a 985 gram mixture of plaster of Paris.

Defendant was charged with and pleaded guilty to possession with intent to distribute an unspecified quantity of cocaine in violation of 21 U.S.C. § 841(a)(1). The District Court held hearings to determine whether defendant should be sentenced under the Guidelines for 85 grams, the amount defendant actually possessed, the 500 grams he attempted to buy, or 1,070 grams, the weight of the package including the plaster of Paris.[1] The District Court adopted the recommendation of the presen-

---

1. Under the Guidelines, the base offense level for an amount of cocaine less than 100 grams is 16 with a range of 21–27 months. For an amount of cocaine between 500 grams and 2 kilograms, the base offense level is 26 with a range of 63–78 months. U.S.S.G. § 2D1.1(c).

tence report and imposed a 51-month sentence based on a quantity of at least 500 grams adjusted for acceptance of responsibility.

The issue presented on appeal was whether defendant should be sentenced only for the 85 grams of cocaine actually possessed. A panel of the Court (Merritt, C.J., and Jones, J. with Kennedy, J. concurring in part and dissenting in part) reversed. *United States v. Davern*, 937 F.2d 1041 (6th Cir.1991) (vacated). The majority held that courts should take a "flexible approach to the guidelines" by "consider[ing] the facts in light of qualitative standards [set forth in 18 U.S.C. § 3553(a)] designed to insure punishment 'not greater than necessary.'" The majority stated that a court was not required to follow the Guidelines when "the parties present a legitimate aggravating or mitigating circumstance ... not adequately taken into consideration" by the Guidelines. In such cases, the majority held, the Guidelines are general principles to be considered "in light of the principles of sentencing outlined in § 3553(a)." On the narrow issue presented for review, the panel agreed that the weight of the plaster of Paris should not be included when calculating the base offense level. The majority determined that defendant's sentence should be based on the 85 grams of cocaine he actually possessed. The majority found that the Guidelines are not clear on the question of how to consider a quantity of drugs a defendant attempted to purchase when in fact he actually possessed a lesser amount. The majority considered this situation one such "aggravating circumstance" to be weighed by a district court in sentencing.

The panel's opinion was vacated by a vote to rehear the case en banc. Following rehearing en banc, we AFFIRM the District Court.

## II.

The government conceded in its rehearing en banc brief that the weight of the plaster of Paris was not to be considered, and therefore that issue is no longer before the Court.[2]

## III.

■ Defendant argues that a district court has the discretion to disregard the Guideline range in cases where the range is out of proportion to 18 U.S.C. § 3553(a)'s directive that a court "impose a sentence sufficient, but not greater than necessary to comply" with the purposes of sentencing. Defendant suggests that the district court may impose a sentence considering only the factors mentioned in 18 U.S.C. § 3553(a)(2). We disagree because we find that the Guidelines are a sentencing imperative. 18 U.S.C. § 3553(b) states:

The court *shall* impose a sentence of the kind, and within the range, referred to in subsection (a)(4) *unless* the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. (Emphasis added.)[3]

Subsection (a)(4) provides that in determining the particular sentence to be imposed, the court shall consider

the kinds of sentence and the sentencing range established for the applicable cate-

**2.** We note that the Supreme Court in *Chapman v. United States*, —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), stated that weights of containers and packaging materials are not included in calculating a sentence because these items are "not mixed or otherwise combined with the drug." *Id.* at ——, 111 S.Ct. at 1926.

**3.** The remaining language of section 3553(b) provides:
In the absence of an applicable sentencing guideline, the court shall impose an appropri-

ate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

gory of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(1) and that are in effect on the date the defendant is sentenced.

Our conclusion that a Guideline sentence is mandatory and that departure is justified only as stated in section 3553(b) is supported by the Supreme Court's statement in *Burns v. United States,* —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). There the Court stated:

> The only circumstance in which the district court can disregard the mechanical dictates of the Guidelines is when it finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b).

*Id.* at ——, 111 S.Ct. at 2184–85.

■ We believe that a district court must first determine a Guideline sentence, and then must consider whether there is an "aggravating or mitigating circumstance," that is, one not taken into account in setting the Guideline sentence. Until the judge has determined a sentence under the Guidelines, it seems impossible to determine whether the mitigating or aggravating circumstance had in fact been taken into account in promulgating those specific Guidelines.

■ Defendant argues that the fact that he negotiated to purchase, although never possessed, 500 grams is a mitigating circumstance not considered by the Guidelines that the District Court should have taken into account. We disagree because we find that the Guidelines specifically provide for this situation.

Section 2D1.1 is the Guideline section that sets forth the base offense levels for drug offenses. Application Note 12 to section 2D1.1 makes clear that the specific

quantity of drugs mentioned in the indictment is not controlling. That note states:

> If the offense involved negotiation to traffic in a controlled substance, *see* Application Note 1 of the Commentary to § 2D1.4.

If we turn then to Application Note 1, we find that it provides:

> If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount.

■ Although that note is located under a heading "Attempts and Conspiracies," as the Fifth Circuit points out in *United States v. Garcia,* 889 F.2d 1454 (5th Cir. 1989), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990), its application is not limited to attempts and conspiracies. The Fifth Circuit notes that section 2D1.1 specifically directs the sentencing court to note if, as in this case, the offense of conviction involves "negotiation to traffic." In *Garcia,* the defendant was convicted of distributing eight ounces of cocaine. He had negotiated to sell sixteen ounces to a DEA agent, but ultimately delivered only eight ounces to the agent. The evidence showed that the defendant was capable of producing sixteen ounces. The court traced the Guidelines from Application Note 11 [4] of § 2D1.1 to Application Note 1 of § 2D1.4, and held that the District Court appropriately had used the sixteen ounces to determine the offense level.

■ Returning to section 2D1.1, we find that Application Note 12 also permits us to analyze this case under the relevant conduct provision of the Guidelines. Application Note 12 states:

> Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct).

Section 1B1.3(a)(2) requires a base offense level to be determined on the basis of "all

---

**4.** At the time *Garcia* was decided, Application Note 11 contained the same language as Application Note 12 does today. The Guidelines were

amended on November 1, 1989 and the relevant language was moved to Application Note 12.

such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" if the offenses are "of a character for which section 3D1.2(d) would require grouping of multiple counts." Section 3D1.2(d) requires grouping of drug offenses. The law in this Circuit is clear that a base offense level is determined by the amount of drugs included in the defendant's relevant conduct, not just amounts in the offense of conviction or charged in the indictment. *See e.g., United States v. Ykema,* 887 F.2d 697 (6th Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990); *United States v. Smith,* 887 F.2d 104 (6th Cir.1989); *United States v. Sailes,* 872 F.2d 735 (6th Cir. 1989); *United States v. Perez,* 871 F.2d 45 (6th Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).

 The defendant argues that the relevant conduct provision is ambiguous and does not indicate that conceptually distinct crimes should be combined. The defendant argues that section 1B1.3 does not specifically state that unconvicted conspiracy or distribution offenses should be joined with a possession offense. We believe that section 1B1.3 does permit an unconvicted attempt or conspiracy to be considered as relevant conduct to a possession offense because section 1B1.3(a)(2) expressly states that the entire course of conduct, common scheme or plan shall be considered. The fact that attempts and conspiracies are inchoate crimes and therefore "not of the same character" as a substantive possession offense is immaterial so long as the conduct was part of the same course of conduct, common scheme or plan.[5] Defendant's attempt to purchase 500 grams of cocaine was clearly part of the same course of conduct or common scheme or plan as defendant's possession of the cocaine actually delivered to him.

In *United States v. White,* 888 F.2d 490 (7th Cir.1989), the Seventh Circuit considered a case very similar to the instant case. Customs officials intercepted two packages addressed to the defendant and found that each contained hollowed-out magazines filled with cocaine base. They turned the packages over to the DEA, which removed 300 grams of the cocaine base, left 1.88 grams in one of the packages, and added sugar to make up the bulk. They delivered one package to defendant's post office box, and arrested him later in the day after he had picked up the package. The district court sentenced defendant based on the 1.88 grams he actually possessed. The Seventh Circuit reversed. The court held that because section 1B1.3(a)(2) calls for inclusion of all amounts that were part of the same course of conduct, the entire amount of cocaine base should have been considered in finding the base offense level. The court found that the defendant's course of conduct was receiving the packages of cocaine base. It was merely fortuitous that the defendant received only 1.88 grams. Had the package slipped through customs or had the DEA not removed most of the drug, the entire amount would have arrived. The court found that "[t]he nature and seriousness of White's conduct is the same no matter how much of the cocaine the DEA took out." The court held that the defendant's sentence must be based on the total amount in the packages when they entered the country.

The court further noted that although the defendant did not succeed in possessing 302 grams, that amount must be included because section 2D1.4(a) requires that the offense level for an attempt to commit a drug offense is the same as if the object of the attempt had been completed. The court noted that it is irrelevant that defendant was not convicted of attempt because "[t]he Guidelines treat success and failure, conviction and no conviction, alike in drug cases, so long as the amounts are ascertainable." *Id.* at 499.

---

5. For offenses after November 1, 1991, it is clear that offenses proscribed by different statutory provisions may be grouped under section 3D1.2 and that an uncharged attempted possession would be grouped with a possession conviction. *See* U.S.S.G. § 1B1.3, comment. (n. 2). This new commentary, however, is not controlling in the instant case because it was not in effect on the date defendant was sentenced. 18 U.S.C. § 3553(a)(5).

We agree with the logic of the Seventh Circuit. The seriousness of defendant's unlawful conduct is neither increased nor decreased by what happened to be in the package. Here, it is simply fortuitous that defendant actually possessed only 85 grams of cocaine rather than the 500 grams he sought and believed he had purchased.[6]

## IV.

Accordingly, we AFFIRM the defendant's sentence.

DAVID A. NELSON, Circuit Judge, concurring.

I share some of the dissenters' reservations about the wisdom of the current sentencing guideline system, but I concur in the judgment of the court and in Judge Kennedy's opinion. Unlike the dissenters, I do not believe that the Sentencing Commission violated any statutory or constitutional limitation in prescribing the sentencing range normally applicable to cases such as the one before us here. Neither do I believe that defendant Davern's rights were violated by the application of the sentencing guidelines to him. The importance of the issues presented prompts me to explain the reasons for my conclusions in some detail.

## I

Congress has made it a crime for any person knowingly or intentionally to possess cocaine with intent to distribute it. 21 U.S.C. § 841(a)(1). Any person who violates § 841(a) in the way defendant Davern did, Congress has declared, "shall be sentenced to a term of imprisonment of not more than 20 years." 21 U.S.C. § 841(b)(1)(C). There can be no doubt at all as to the intent of Congress with respect to the maximum sentence for Mr. Davern's crime: Congress intended a sentence of up to 20 years.

Mr. Davern was well aware of the 20–year maximum sentence when he entered his plea of guilty:

"THE COURT: Do you know what the maximum penalties required by law are in relation to this case, sir?

---

**6.** The dissent argues that the relevant conduct provisions of the Guidelines are not authorized by the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.* and 28 U.S.C. §§ 991–98, and specifically that they violate the language of 28 U.S.C. § 994(1). We disagree with both propositions.

We note first that the issues discussed by the dissent were not raised by defendant. Amicus curiae does argue that the Sentencing Commission has misinterpreted its enabling legislation, so we respond briefly.

Section 994(c)(2) authorizes the Sentencing Commission to consider "the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense." The Guidelines accomplish this through the relevant conduct provisions. Certainly the circumstances of defendant's offense include the fact that defendant negotiated to purchase 500 grams of cocaine. It is through section 1B1.3 that these circumstances are taken into consideration in determining defendant's sentence. Further, we read 28 U.S.C. § 994(1) to apply to the appropriateness of penalties only in cases of multiple convictions. If section 994(1) is limited to multiple convictions it is simply inapplicable to relevant conduct considerations. There is nothing in this section that forecloses taking relevant conduct into account as to each conviction.

The dissent's second issue is that the relevant conduct provisions violate due process because a defendant, when he pleads guilty, has no notice of the extent to which his sentence may be enhanced by additional criminal conduct for which he is not charged. The essence of this argument is that a defendant who is not told that his prior related conduct may be used to enhance his present sentence, or who cannot determine how much it will be enhanced, has not made his plea knowingly and voluntarily. In this case defendant has not sought to set aside his guilty plea and thus has not challenged the voluntariness of his plea. The issue is not before us.

The balance of the dissent argues that prosecutors have too much discretion in determining what relevant conduct will be presented to the court for consideration in sentencing a defendant. There are no allegations that prosecutors have been inventing relevant conduct where none exists. The only discretion prosecutors may have is to fail to reveal relevant conduct to the probation officer. Although this may be a concern, it seems closely related to the discretion given to prosecutors generally to determine which offenses they will charge. There can be no claim in this case that the prosecutor deceived the court with regard to relevant conduct. This general policy concern seems best left to a case where it has some implication, or to the legislative branch.

THE DEFENDANT: Yeah.

THE COURT: Tell me.

THE DEFENDANT: Zero to 20 years and a million dollars fine.

THE COURT: 20 years and a million dollar fine. Three years supervised release.

[ASS'T. U.S. ATT'Y.]: Correct, your Honor.

THE COURT: And an assessment of $50. Do you understand all of those matters?

THE DEFENDANT: Yes.

THE COURT: Does the fact that you know that change your mind in any manner about entering a plea of guilty here today?

THE DEFENDANT: No."

In addition to setting a 20–year maximum sentence, Congress has provided in some situations for minimum sentences as well. In the case of a violation of 21 U.S.C. § 841(a) involving 500 grams or more of a mixture containing a detectable amount of cocaine, for example, Congress has said that the defendant "shall be sentenced to a term of imprisonment which may not be less than 5 years...." 21 U.S.C. § 841(b)(1)(B)(ii)(II).

The Assistant United States Attorney who prepared the indictment for the grand jury in this case was concerned that the sentencing court might have no choice but to impose a mandatory minimum sentence of imprisonment for 5 years.[1] In drafting the indictment, therefore, she omitted any reference to the quantity of cocaine involved. The indictment charged simply that "JOHN P. DAVERN did knowingly, intentionally, and unlawfully possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance; in violation of Title 21, Section 841(a)(1), United States Code."

The record is clear that the indictment was deliberately drafted this way for defendant Davern's benefit. As the Assistant U.S. Attorney explained in open court,

"I could have, and we normally would have, written that which would have given him a mandatory minimum five years and that was expressly drafted for the benefit of the defendant so that he could get credit for the minus two of acceptance of responsibility under the guideline and get under the mandatory statutory 60 months."

It is doubtless true that "there are many 'games to be played'" in indicting defendants and in plea bargaining, *United States v. Harrington,* 947 F.2d 956, 964 (D.C.Cir.1991) (Edwards, J., concurring), but the case at bar happens to be one in which the game-playing was intended to work to the defendant's advantage. And it did work to his advantage, of course; Mr. Davern was sentenced not to 5 years, but to a little over 4 years.

The attempt by the United States Attorney's office to circumvent a possible mandatory minimum 5–year sentence did not offend the trial judge, and it does not offend me. Prosecutors have always enjoyed a wide measure of discretion under our system—they do not have to seek indictments at all, for example, if they see some legitimate reason for not prosecuting—and I do not believe there was any abuse of discretion in this case. The dissenters note that defendant Davern's education, lack of a prior criminal record,[2] and strong ties to

---

**1.** *Chapman v. United States,* 500 U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), suggested that the weights of containers and packaging materials should generally not be included in the weight of a mixture or substance containing an illicit drug, "because those items are ... clearly not mixed or otherwise combined with the drug." 500 U.S. at ——, 111 S.Ct. at 1926, 114 L.Ed.2d at 536. *Chapman* was not decided, however, until more than a year after Mr. Davern was indicted.

**2.** Although Mr. Davern was a first offender, as pointed out in the text accompanying footnote 7 of Chief Judge Merritt's dissent, the statutory provision to which the footnote refers in this connection, 28 U.S.C. § 994(j), does not suggest that prison sentences are inappropriate for first offenders who commit crimes of the sort to which Mr. Davern pleaded guilty. Section 994(j) directs the Sentencing Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender *who has not been convicted of*

a good family and to the community make Mr. Davern somewhat atypical as defendants go, and it is only natural for prosecutors and judges to want to do what was evidently done here—*i.e.*, take such factors into account. Under the guidelines, nonetheless, the extent to which a defendant's personal characteristics can warrant special consideration by the courts is rather circumscribed. Congress clearly intended this.

The statutory penalties apply to "any person" who violates 21 U.S.C. § 841(a). Young or old, college-educated or illiterate, white or non-white, from a good family or no family, "any" person who does what John Davern did faces a maximum sentence of 20 years. And he faces that sentence regardless of whether he happens to have enjoyed Mr. Davern's advantages in life.

In the statute establishing guideline sentencing, Congress directed the Sentencing Commission to "assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed and socioeconomic status of offenders." 28 U.S.C. § 994(d). The Commission, as far as I can tell, has faithfully followed this Congressional directive.

Congress also directed the Commission to consider whether certain factors listed in the statute have any relevance to the nature and extent of an appropriate sentence. 28 U.S.C. § 994(d)(1) through (11). Among the factors listed are "age," "education," "physical condition, including drug dependence," "family ties and responsibilities," and "community ties." To the extent that the Commission finds that one or more of these factors have any relevance at all, Congress directed the Commission to "take them into account only to the extent that they do have relevance...."

The Commission has considered the things that Congress told it to consider and has exercised its informed judgment on these matters. With respect to age, education, family ties and responsibilities and community ties, the Commission has concluded that the factors are "not ordinarily relevant in determining whether a sentence should be outside the guidelines...." U.S.S.G. §§ 5H1.1, 5H1.2, 5H1.6. With respect to drug dependency and alcohol abuse, the Commission is more emphatic:

"Drug dependence or alcohol abuse is not a reason for imposing a sentence below the guidelines. Substance abuse is highly correlated to an increased propensity to commit crime." § 5H1.4.[3]

---

*a crime of violence or an otherwise serious offense....*" (Emphasis supplied.) The crime of which Mr. Davern has been convicted is one that Congress obviously considers a very serious offense indeed.

**3.** My own view, if anyone should think it material, is that drug dependence or alcohol abuse ought not be treated as a reason for imposing a sentence below the guideline range, but that other personal offender characteristics—including successful efforts to overcome chemical dependency—might well have been taken into account by the Sentencing Commission to a greater extent. Two years ago, in response to a call from the Commission's Chairman for comments on areas of the guidelines that might be improved, I urged the Commission "to re-examine the policy of ignoring characteristics that could be indicative of the likelihood that a particular defendant will engage in future criminal behavior." And demonstrating that I am no less capable than the next judge of overlooking relevant statutory text—see the last sentence of 28 U.S.C. § 994(d)—my letter to the Commission continued as follows:

"To illustrate the sort of thing that concerns me, suppose that a judge is called upon to

sentence a woman of mature years who has strong family ties and responsibilities and whose offense seems to have been a one-shot affair. I should have thought, in such a case, that it would be appropriate for the sentencing judge to consider the defendant's age, sex, and family situation in deciding whether to depart from the guideline range."

I think Congress was wrong in demanding that the guidelines be entirely neutral as to the sex of the offender. I think the Sentencing Commission was wrong in not according more relevance to the factors that Congress, in 28 U.S.C. § 994(d), told the Commission to consider. But I do not think my personal views give me a veto power over Congressional legislation, or entitle me to second-guess the Sentencing Commission on matters that Congress has clearly committed to the Commission's discretion.

It is apparently Judge Merritt's view (see pages 1502–03 of his dissent) that if a court disagrees with the extent to which the Sentencing Commission has taken the § 994(d) characteristics into account, the court should feel free to substitute its judgment for the Commission's. Why does Judge Merritt believe that a court has such power? The guidelines are not a statute,

I fully agree with the dissenters that it is important, in this case, to understand not only the exact nature of Mr. Davern's crime, but something about him as an individual. The nature of the crime is relatively easy: Mr. Davern paid $10,500 that he claimed to have saved from his unemployment benefits for what he thought was half a kilogram of cocaine. He told the undercover agent from whom he made the purchase that "he was going to sell the cocaine in one ounce portions [4] and that he intended to 'cut it' except for that cocaine he would sell to close friends." He told the sentencing judge, on the other hand, that he planned to use some of the cocaine himself, selling the rest to a "[f]ew friends, just to support my habit." It is undisputed that Mr. Davern intended to distribute at least part of the cocaine to others. It is also undisputed that Mr. Davern was still addicted to cocaine at the time of his arrest.

Mr. Davern told the sentencing judge that the undercover agent had "enticed" him into buying more than he would have bought ordinarily by offering "this great bargain price." The judge—who has probably seen enough of these cases to have a pretty good idea of the going price for cocaine in Northeastern Ohio—obviously did not accept this part of Davern's story as true. If he had believed it, the judge could have used the government's offer of a "bargain price" as a basis for a downward departure—i.e., a sentence below the 51–month floor of the guideline range. But the judge could not depart downward on the basis of a representation that was not true.

Neither could the judge depart downward on the basis of Mr. Davern's being a 25–year–old college student, or because Mr. Davern was a member of a large, closely-knit family, or because he had strong ties to the community. Factors such as these

may be weighed by the sentencing judge in deciding what sentence to impose within the guideline range—51 months as opposed to 63 months, e.g.—but the Sentencing Commission, discharging a responsibility vested in it by Congress, has decided that such factors may not ordinarily be used to justify a sentence below the guideline range. If the government did not in fact entice Mr. Davern into contracting to buy half a kilogram by offering him a bargain price, therefore, the guidelines dictate a minimum sentence of 51 months. I am certainly not prepared to say that a 51–month sentence—less than one-fourth the statutory maximum of 240 months—is out of proportion to Mr. Davern's crime.

## II

Inviting our attention to the statutory construction argument advanced in the original panel opinion, reported at 937 F.2d 1041, the dissenters suggest that the en banc court has disregarded the mandate of 18 U.S.C. § 3553(a). Paragraph 2 of that section of the statute requires a sentencing court to impose a sentence sufficient to, among other things, reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant. At the same time, however, the sentence is "not [to be] greater than necessary ... to comply with [these] purposes...." *Id.*

As Judge Kennedy demonstrated very effectively in her dissent from the original panel opinion, § 3553(a) does not stand alone. It must be read in conjunction with § 3553(b), which makes it mandatory that the court impose a sentence within the range established under the guidelines "unless the court determines that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately

---

of course, but the Sentencing Reform Act is—and what the Act says is that "[t]he Commission" shall consider whether the matters listed in 28 U.S.C. § 994(d) have any relevance. Having considered them, the Act says, *the Commission* shall take them into account only to the extent that they do have relevance. This court

is not the Commission, and Congress has not authorized us to act as if we were.

**4.** There are more than 17 one ounce portions in half a kilogram, so Mr. Davern could conceivably have intended to put cocaine in the hands of up to 17 or more different people.

taken into consideration by the Sentencing Commission in formulating the guidelines...." See 937 F.2d at 1051 *et seq.*

Many federal district judges would probably prefer to be able to decide for themselves what sentence would be sufficient, in a particular case, to comply with the purposes of § 3553(a)(2). Congress, however, has seen fit to delegate to the Sentencing Commission responsibility for determining what range of sentences will comply with the statutory purposes for various types of offense and various types of defendant.[5] The Supreme Court has upheld the constitutionality of this delegation. *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Although a sentencing court must doubtless consider the elements of § 3553(a) in deciding what particular sentence to impose within a given guideline range, therefore, the court is not free to second-guess the Commission on what the range ought to be. Perhaps, in time, Congress will heed the urging of the New York Bar Association and others to adopt amendments transforming the guidelines from "compulsory prescriptions" to "general standards." Unless and until Congress acts, however, it is obvious that we must live with the law now on the books.

Expanding on an argument that was put forth somewhat tentatively in the original panel opinion ("[b]y using the word 'convicted,' Congress may well have intended to prevent the Commission from ordering judges to sentence for unconvicted crimes for which the defendant has not received notice in the indictment and an opportunity to defend in the traditional way," 937 F.2d at 1051), the dissenters now insist categorically that "[t]he statute does not authorize incremental penalties when a defendant is convicted only of a single offense during a time period in which he may also have committed other offenses if he is not charged and convicted for those offenses."[6] With respect, I must say that I do not find this argument persuasive.

In the first place, I do not believe that Mr. Davern was subjected to an "incremental penalty" for offenses of which he was not convicted. He was convicted of possessing a controlled substance (cocaine) with intent to distribute it, and that is all he is being punished for. Using a formula that may be convoluted but that certainly is not ambiguous, the Sentencing Commission has made the range of permissible sentences that may be imposed within the 20–year statutory cap a function of the amount of cocaine the defendant intended to possess. This is clearly not beyond the Commission's power, and I do not understand why a sentence within the prescribed range should be thought to represent an incremental penalty for some offense other than possession with intent to distribute.

In the second place, 28 U.S.C. § 994(*l*)(1)(A) appears to have been designed to guard against the Commission's establishing too low a sentence range for situations where a defendant has been convicted of multiple offenses. It was not designed to impose an upper limit, and I see no reason to suppose that this section was intended to prevent the Commission from ordering judges to take into account unconvicted offenses, committed in the same course of conduct as the offense of conviction, when determining the sentence range for the crime with which the defendant was charged and of which he was found guilty.

---

5. In discharging its responsibility, the Commission has been told to "establish a sentencing range that is consistent with *all* pertinent provisions of Title 18, United States Code." 28 U.S.C. § 994(b)(1) (emphasis supplied.) Among the pertinent provisions of Title 18, of course, is 18 U.S.C. § 3553(a)(2).

6. The relevant portion of 28 U.S.C. § 994(*l*) reads as follows:

"The Commission shall insure that the guidelines promulgated pursuant to subsection (a)(1) reflect—
 (1) the appropriateness of imposing an incremental penalty for each offense in a case in which a defendant is convicted of—
 (A) multiple offenses committed in the same course of conduct that result in the exercise of ancillary jurisdiction over one or more of the offenses...." 28 U.S.C. § 994(*l*)(1)(A).

## III

The dominant theme of Part III of Judge Merritt's dissent—a theme echoed elsewhere as well—is that because Mr. Davern did not have adequate notice of the charges and the prospective sentence, it was unfair and unconstitutional to measure his sentence by the quantity of cocaine he intended to purchase. But Mr. Davern had been fully advised how the sentencing guidelines would operate in his case and what the government contended his minimum guideline sentence should be. If ever a defendant entered a guilty plea with his eyes wide open, that defendant was John Davern.

The record of Mr. Davern's plea hearing shows that this defendant was hardly the sort of uninformed, friendless, and uncounseled individual sometimes encountered in criminal proceedings. Mr. Davern had a very supportive sister who happened to be a probation officer, and he was represented by two prominent and experienced criminal lawyers. These lawyers, as Mr. Davern testified, had gone over the features of the federal guideline sentencing system with him, and Davern has never contended that he was unaware of how the guidelines might be applied to him.

Any such contention would be precluded by the record of the plea hearing. That record shows that Mr. Davern was in court when the Assistant U.S. Attorney told the judge that the low end of the guideline range, as computed by the government, would be a sentence of 51 months. Mr. Davern also heard the Assistant U.S. Attorney state that under the plea agreement she had negotiated with defense counsel, the government would agree that the appropriate sentence was the 51 months at the bottom of the guideline range.

Addressing Mr. Davern directly, the trial judge told him that the government was "indicating to me that they will recommend to the Court at the time of sentencing that the Court sentence at the bottom of the guideline range. Do I make that clear to you?

THE DEFENDANT: Yes.

THE COURT: The range here is what?

[ASS'T. U.S. ATT'Y.]: 51 to 63 months.

THE COURT: 51 to 63. They're going to recommend 51. Do you understand that?

THE DEFENDANT: Yes."

And there is more. Prior to the court's acceptance of the plea, one of Mr. Davern's lawyers stated on the record that notwithstanding the plea agreement, "the defendant certainly in no way stipulates that the guideline range should in fact be 51 to 64(sic) months." Again addressing Mr. Davern directly, the judge explained to him that his attorneys, meeting with the court and the prosecutor in chambers, had raised a question as to what quantity of cocaine should be used in determining the part of the guideline grid to which the court should look in determining the sentence. The judge went on to explain to Mr. Davern that there would be a hearing on this matter, following which the court would make a determination. The judge explicitly informed Mr. Davern that he should not assume that his attorneys' argument would be accepted:

"Now, it may be that I will say that they're wrong. It may be that I'll say that they're right. That is an appealable issue by you to the Circuit Court."

The judge then asked Mr. Davern if this was satisfactory to him. Mr. Davern responded "Yes." It was only after all this that the judge asked Mr. Davern how he pleaded to the indictment and Mr. Davern responded "Guilty."

It is self-evident, I should have thought, that this record bespeaks no violation of Mr. Davern's rights under the Due Process Clause. In some other case, with some other defendant, we may find a trial court accepting a guilty plea under circumstances which, because of the defendant's unfamiliarity with the guidelines, could arguably create a problem of constitutional magnitude. Surely, however, that possibility cannot justify our treating the guidelines as unconstitutional in their application to John Davern, a defendant whose consti-

tutional rights have been scrupulously honored.

MERRITT, Chief Judge, dissenting.

Our court treats the U.S. Sentencing Guidelines as the equivalent of a statute instead of the questionable rules of an administrative agency which has ignored many of the provisions of its governing statute. The Court holds that the "relevant conduct" provisions of the Guidelines are absolute sentencing "imperatives" to be applied automatically without deviation and that they treat "success and failure [in criminal activity], conviction and no conviction alike." [1] Although the Sentencing Commission and its chairman consistently refer to these "relevant conduct" provisions as the "cornerstone of the federal sentencing guidelines," [2] the Sentencing Reform Act of 1984, the Act which authorized the Guidelines, does not expressly mention or authorize any such provisions. [3] As I shall try to make clear below, I do not believe that Congress authorized the type of "relevant conduct" provisions adopted by the Commission and sweepingly applied by our Court here; and I further believe that these provisions have led to a system of criminal sentencing in the federal courts that offends due process and other constitutional provisions. Our Court's sweeping interpretation of § 1B1.3 [4] of the Guidelines respecting the so-called "relevant conduct" enhancement-of-sentence and upward adjustments provisions violates, in my opinion, the unambiguous language of key sections of the Sentencing Reform Act of 1984, 28 U.S.C. § 994(d), and 18 U.S.C. § 3553(a), and the Due Process Clause of the Fifth Amendment.

The willingness of the Court, as legal realists, to recognize and state truthfully what is in fact happening in the administra-

---

1. The precise language of the Court's holding is found in the next to last paragraph of its opinion:

 The court [in *United States v. White*, 888 F.2d 490 (7th Cir.1989)] further noted that although the defendant did not succeed in possessing 302 grams, that amount must be included because section 2D1.4(a) requires that the offense level for an attempt-to-commit a drug offense is the same as if the object of the attempt had been completed. The court noted that it is irrelevant that defendant was not convicted of attempt because "[t]he Guidelines treat success and failure, conviction and no conviction, alike in drug cases, so long as the amounts are ascertainable." *Id.* at 499. We agree with the logic of the Seventh Circuit.

2. William W. Wilkins, Jr. and John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C.L.Rev. 495 (1990).

3. Every state sentencing commission in the United States, contrary to the federal commission, has adopted *conviction offense sentencing* instead of so-called "real offense sentencing" or sentencing on the basis of "relevant conduct." They did so because they believed that such a "relevant conduct" system not based on convicted conduct would violate due process and other constitutional provisions. Dale G. Parent, Structuring Criminal Sentences: The Evolution of Minnesota's Sentencing Guidelines 62–63, 159–61 (1988).

4. Section 1B1.3 defines "relevant conduct" as follows:

§ 1B1.3. *Relevant Conduct (Factors that Determine the Guideline Range)*

(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts or omissions; and

(4) any other information specified in the applicable guideline.

(b) *Chapters Four (Criminal History and Criminal Livelihood) and Five (Determining the Sentence).* Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.

tion of the Guidelines is commendable.[5] Its unwillingness to confine the Sentencing Commission within applicable statutory and constitutional limitations is unfortunate because of the grave injustices it allows and because it severely undermines the role of the federal courts in protecting the rights of the accused.

## I.

Davern was a college student addicted to drugs and alcohol. After being caught in a drug sting, he pled guilty to possession of cocaine. Because of the Guidelines, he is being treated as a major drug dealer. Instead of receiving a sentence of one year and 3 months for 85 grams of cocaine, the amount he possessed, his sentence was automatically increased to 4 years and 3 months for negotiating to purchase 500 grams, conduct for which he was not convicted. The facts surrounding his arrest and conviction illustrate with clarity the unjust and ultimately indefensible system effectuated by the application of the Sentencing Guidelines. The majority provides a cursory rendition of the facts. It is impossible, however, to assess fairly Davern's claims without first examining what took place; what exactly Davern did wrong; and something about him as an individual. A more thorough recitation is in order.

On November 27, 1989, Davern met an undercover FBI agent in a Cleveland, Ohio, parking lot and negotiated to purchase one-half kilogram of cocaine. The record contains no evidence pertaining to the manner in which Davern and the agent got together initially. They agreed on a price of $10,500 for the cocaine and arranged to complete the transaction on November 30, 1989, at a local convenience store.

Davern met the agent as planned, gave him the cash, and received in return a package containing 985 grams of plaster of paris. Embedded inside the plaster was a separate small packet of cocaine weighing about 85 grams. Davern assumed that the package was what the agent said it to be and thus did not examine the substance to ensure that it was cocaine.[6] Instead, he placed the package in his knapsack and exited the agent's vehicle where the men had made the exchange. He was arrested immediately thereafter by special agents of the FBI.

Prior to this arrest, Davern had no record of criminal activity. He was a first offender.[7] He attended Cleveland State University and in two quarters would have completed his degree in business management. He was a member of a large, close-knit family with strong ties to the community. The record contains no evidence to suggest that he had ever been involved in dealing drugs before this occasion. He did not obtain the funds used to purchase the cocaine unlawfully.

As District Court Judge Sam Bell noted when contemplating Davern's sentence, Davern's record prior to this anomalous occurrence was exemplary. Unfortunately,

**5.** In its final footnote drafted in response to this opinion, the court actually retreats from its previous frank acknowledgment that the defendant is being sentenced for unconvicted conduct. (It says the "defendant's offense include[s] the fact that the defendant negotiated to purchase 500 grams of cocaine.") Judge Nelson tries to establish the same point in his concurring opinion. But plainly the defendant did not possess what he never got, and to sentence him automatically for possessing 500 grams, as though he were convicted of it, is a pure legal fiction. The court was correct in the main body of its opinion as circulated prior to its footnote. As we will discuss further below, the court is automatically applying a "relevant conduct" sentencing rule, increasing threefold the defendant's sentence for the unconvicted issue of negotiating to purchase 500 grams. Although the court has a tendency to shilly-shally on this point, it does

not deny that we have accurately characterized its holding which is that under the rules of relevant conduct as adopted by the Sentencing Commission a defendant must suffer incremental punishment for other unconvicted crimes.

**6.** There is no evidence to support the prosecution's characterization of Davern as an experienced drug dealer. I find it improbable that a person experienced in underworld dealings would so naively place his trust and more than $10,000 with a person with whom he had no previous dealings.

**7.** The Sentencing Commission does not mention but rather has chosen to simply ignore the language of 28 U.S.C. § 994(j) which explicitly recognizes the general inappropriateness of prison sentences for first time offenders.

however, while Davern outwardly appeared to be leading a successful and productive life, privately he was abusing drugs and alcohol. He admittedly entered into the drug transaction with the intent of using some of the cocaine himself and selling the rest to support his drug habit.

Davern had demonstrated a personal commitment to overcoming his addiction. He had enrolled in Alcoholics Anonymous only weeks before his arrest. Although he had not yet overcome his substance abuse, he importantly had admitted that he had a problem. Ironically, as noted by his sister, were it not for the long term of imprisonment, Davern's arrest could have benefitted him in the long run by making him come to terms more quickly with his drug and alcohol abuse. By the time he entered a guilty plea, Davern was attending five meetings of A.A. each week and was effectively free from drugs and alcohol.

At all times between his arrest and conviction, Davern displayed remorse for his criminal conduct and an acceptance of personal responsibility. He received strong support from his family and friends for which he expressed gratitude. Both the prosecution and the Court noted that the circumstances surrounding the case were atypical.

It is apparently the view of Judge Nelson in his concurring opinion that the Sentencing Commission is correct that these personal offender characteristics should not be taken into account. This view is completely inconsistent with 18 U.S.C. § 3553(a)(1) that the sentencing courts "shall consider ... the history and characteristics of the defendant," and impose a sentence "not greater than necessary"[8] and 28 U.S.C. § 994(d) in which Congress enumerates a

specific list of factors that the Commission should consider with respect to a defendant's sentence. Why does Judge Nelson believe a court may not depart downward on the basis of such characteristics which the Commission concededly did not take into account and which the Sentencing Reform Act says the court "shall consider?" The Guidelines are not a statute, and they do not excuse a sentencing court from doing its duty under the statute, no matter what the Sentencing Commission says. Contrary to Judge Nelson's belief, the fact that the Commission has abdicated its duty to consider the "purposes" of sentencing and the personal characteristics of defendants does not authorize a court to abdicate its duty to impose a sentence "not greater than necessary" under § 3553(a).

The Court abdicates its duty when, as here, it permits the Commission to pick and choose which directives it will honor and which it will disregard. By accepting wholesale the Commission's interpretation of the enabling act, the Court allows the Commission to construe congressional directives to perpetuate its own will rather than the expressed will of Congress. The Commission has simply ignored many of the provisions of the statute that weigh in favor of leniency and has adopted rigidly severe "relevant conduct" provisions which Congress did not authorize.

It is true, as Judge Nelson points out, that Congress directed the Sentencing Commission to "assure that the [G]uidelines and policy statements are entirely neutral as to the race, sex, national origin, creed and socioeconomic status of offenders." 28 U.S.C. § 994(d). In the same section along with this general nondiscrimination provision, however, Congress explic-

---

**8.** Sections 3553(a)(1) and (2) provide:

(a) **Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of the subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

itly instructed the Commission to consider the age, education, physical condition including drug dependence, family ties and responsibilities, and community ties of a defendant. 28 U.S.C. § 994(d)(1)–(11). These characteristics have traditionally weighed in favor of leniency in sentencing. The enabling act did nothing to change that time-honored tradition. It is these factors that I emphasize today with respect to Davern.

Judge Nelson dismisses any reliance on § 994(d) by pointing out that the Commission stated that it did consider the listed factors and determined that they are not ordinarily relevant. The Commission singled out drug dependence in particular as never being a justification for a downward departure. The Commission's wholesale and formulaic dismissal of the factors is unsatisfactory. If we simply accept as sufficient the Commission's statements of compliance, we abdicate our responsibility to look at substance over form.

The language of § 994(d) indicates that Congress intended that the Commission consider the listed factors to the extent that they are relevant "with respect to *a defendant.*" (emphasis added.) This language suggests a much more individualized consideration of the factors than offered by the Commission. The Commission has made no attempt to incorporate the factors into the Guidelines at all, much less develop a meaningful system for determining whether such considerations should warrant a lighter sentence in the case of an individual defendant. The problem of disregarding these factors is evident in cases involving reformed drug addicts, even those addicts that did not enjoy John Davern's privileges. In *United States v. Floyd,* 738 F.Supp. 1256 (D.Minn.1990), for example, the Court departed downward

from the Guidelines sentence because in the Guidelines the Commission did not adequately consider the case of an individual that successfully overcame an addiction. The defendant in that case was a crack addict and single mother of four young children. It is unlikely that Judge Nelson would characterize her as "privileged." The Court justified its downward departure for reasons similar to those I propose here:

> [S]pecial, mitigating circumstances exist in this case. There has been substantial and demonstrable post-crime rehabilitation by the defendant. The rehabilitation is of a kind and nature which has not been adequately taken into consideration by the Sentencing Commission. As a result, the [G]uidelines overstate the severity of defendant's offense conduct.

*Id.* at 1259.[9]

It was the opinion of the prosecutor and apparently the majority of this Court as well, that the Guidelines adequately took into account all of the circumstances relevant to Davern's crime and punishment and, by dictating a 51 month period of imprisonment, correctly reflected the will of Congress and the Sentencing Commission. Furthermore, the majority appears to believe that Davern's punishment is not out of proportion to his crime.

In its opinion, the majority rejects Davern's argument that the District Court has discretion to reduce the Guideline range if the range is disproportionate to Congress's directive in 18 U.S.C. § 3553(a). That Directive, worded in mandatory language, states that a court "shall impose a sentence sufficient, but not greater than necessary to comply" with the purposes of sentencing. The majority, like the Sentencing Commission, totally disregards the "purposes" of sentencing in § 3553(a) of the enabling act.[10] It holds instead that

---

9. *See also* Note, *Sentencing the Reformed Addict: Departure Under the Federal Sentencing Guidelines and the Problem of Drug Rehabilitation,* 91 Col.Law Rev. 2051. The author argues that the Commission too quickly rejected the importance of certain offender characteristics that many judges find relevant to sentencing including efforts to overcome drug dependency. He concludes that departure is justified when the Commission did not adequately consider

offender characteristics that a court believes to be relevant to the sentence of a particular defendant.

10. See our panel decision for a more comprehensive treatment of our view that the Guidelines should not be so construed under the enabling statute. *United States v. Davern,* 937 F.2d 1041 (6th Cir.1991) *vacated.*

the District Court has no such discretion, stating in an oxymoronic phrase, that the "relevant conduct" provisions of the *"Guidelines* are a sentencing *imperative."* (emphasis added). It treats the Guidelines as if they were the statute itself. The majority's interpretation regretfully has become the almost universally accepted view of the Guidelines.

Observing this trend, the New York Bar Association's Committee on the Federal Courts and practically every other commentator [11] have urged Congress to overrule the Sentencing Commission and transform the Guidelines from compulsory prescriptions to general standards. The Committee has stated:

> Broad goals of deterrence should never take precedence over doing justice to the individual in the dock; yet many judges feel they are forced to treat the defendants they are called upon to sentence in a dehumanized fashion, artificially ignor-

ing entire chapters of their personal histories.

The Committee on Federal Courts, New York Bar Ass'n, *Transforming the Sentencing "Guidelines" into (Just) Guidelines: Comments on the Federal Courts Study Committee Proposal,* The Record 675 (1992).

Judge Bell, the sentencing judge in this case, was troubled by the constraint he felt under the Guidelines to disregard much of Davern's personal history. Reflecting on his decision to adopt the recommendation of the probation officer in the presentencing report, Judge Bell expressed his discomfort with the Guideline sentence. He stated:

> One is tempted in a case like this in all candor to rule in another way because one is tempted to be result oriented. Courts, I think, should not rule on that basis, and this Court will not do so in this case. It's an unusual circumstance that

---

**11.** *See, e.g.,* Report of the Federal Courts Study Committee 133–43 (Apr. 2, 1990) (recommending a host of reforms in the Guidelines including congressional repeal of mandatory minimum sentence provisions and amendments to the enabling act to identify Guidelines as "general standards" to be presumptively followed, as opposed to compulsory rules); Albert W. Alschuler, *The Failure of Sentencing Guidelines: A Plea for Less Aggregation,* 58 U.Chi.L.Rev. 901, 917 & 939–41 (1991) (calling for revision of Guidelines to enable them to be used as "benchmarks" for sentencing in paradigmatic cases, to be used by judges like legal precedent); Kenneth R. Feinberg, *The Federal Guidelines and the Underlying Purposes of Sentencing,* 3 Fed. Sentencing Rep. 326, 327 (1991) (calling for revision of Guidelines to better meet legislative intent, as expressed in 18 U.S.C. § 3553(a); Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentences,* 101 Yale L.J. 1681 (1992) (the most comprehensive law review treatment of the defects in the Guidelines by one of the country's leading scholars in the field of criminal sentencing); Bill Barratt & Frank S. Gilbert, *et al., Probation Officers and the Guidelines* 4 Fed.Sentencing Rep. 106, 106–07 & 109–111 (1991) (probation officers advocating various revisions to "let the Guidelines be Guidelines"); Gerald W. Heaney, *The Reality of Guidelines Sentencing: No End to Disparity,* 28 Am.Crim. L.Rev. 161, 225–32 (1991) (issuing various suggestions to Congress and the Commission to modify Guidelines and to repeal mandatory minimum sentencing); Theresa W. Karle & Thomas Sager, *Are the Federal Sentencing*

*Guidelines Meeting Congressional Goals?,* 40 Emory L.J. 393, 444 (1991) (calling for Congress or the Commission to provide clearer guidance on "consideration of offender characteristics in sentencing and regarding proportionality" between sentences); Note, Steve Y. Koh, *Reestablishing the Federal Judge's Role in Sentencing,* 101 Yale L.J. 1109, 1127 (1992) (recommending complete scrapping of existing Guidelines and revision of framework along lines advocated by Professor Alschuler); Marc Miller & Daniel J. Freed, *Editors' Observations: Honoring Judicial Discretion Under the Sentencing Reform Act,* 3 Fed.Sentencing Rep. 235, 235–38 (1991) (challenging Commission's promulgation of Guidelines that ignored congressional intent); Charles J. Ogletree, Jr., *The Death of Discretion? Reflections on the Federal Sentencing Guidelines,* 101 Harv.L.Rev. 1938, 1957–58 (1988) (disputing Commission's adoption of Guidelines that radically curtailed judicial discretion, failed to address the purposes of sentencing listed in 18 U.S.C. § 3553, and inadequately considered individual offenders' characteristics); Comment, Jonathan E. Scharff, *Federal Sentencing Guidelines: Due Process Denied,* 33 St. Louis U.L.J. 1049, 1072–74 (1989) (advocating congressional amendment of Sentencing Reform Act to require evidentiary hearings and modification of Federal Rules of Criminal Procedure to provide better notice to defendants); and Jack B. Weinstein, *A Trial Judge's First Impression of the Federal Sentencing Guidelines,* 52 Alb.L.Rev. 1, 29–31 (1987) (recommending controlled judicial discretion in construing Guidelines to avoid pitfalls of applying "purely mathematical formulas").

brings a man like this defendant to this Court without a criminal history and with the support of so many of his fellow citizens and his family in this case.

Sentence Hearing, Case No. 1:89CRO380, slip op. at 13 (N.D.Ohio July 11, 1990).

The problem with eliminating the attention courts have traditionally paid to personal characteristics of the defendant, and should continue to pay under § 3553(a), is one seen here and in many cases that come before this Court. In turning away from personal considerations that may or may not suggest an appropriate sentence, we turn to ostensibly objective measures to calculate a particular defendant's culpability.[12] But these measures are clearly flawed, for the government in many cases creates the objective facts.

Although Davern pled guilty only to possession of cocaine and possessed only 85 grams of cocaine, the majority today affirms the District Court's sentence for his attempt to purchase 500 grams of cocaine. Two propositions come to mind when reviewing these facts: (1) Davern might not have pled guilty to possession had he suspected that the Court would calculate his sentence as if his attempt to possess 500 grams of cocaine had been successful; and (2) Davern might not have attempted to purchase such a large quantity of cocaine had he been dealing with a less accommodating seller. When asked why he wanted to purchase so much cocaine, Davern explained to the judge that he would not usually purchase so much, but that the price was a bargain.[13] Had the agents not made the price so appealing, Davern as an addict might have bought less. The less he bought, the lower his sentence range would be under the Guidelines. This supposed objectivity cannot fairly be considered a reliable indicia of culpability.

Under the old system, most courts would have sentenced Davern as a minor offender.[14] Under the Guidelines the Defendant received more than four years' imprisonment, not because the judge thought Davern's crime justified so much time in prison or because he felt that society would be safer and free of a dangerous felon. He imposed the sentence because he felt bound within the rigidity of the inaptly named "Guidelines." I do not believe that Congress intended the Guidelines to be so rigidly construed.

## II.

We have seen how our Court has chosen to treat the numerous relevant conduct upward adjustment possibilities contained throughout the Guidelines as "imperatives" or mandates for the sentencing court to apply automatically without deviation based largely on the information concerning uncharged and unconvicted conduct provided by the prosecutor. The Court's holding is breathtaking. Following the "logic" of Judge Easterbrook's opinion in a Seventh Circuit case, our court holds that in interpreting the relevant conduct provisions it is entirely "irrelevant" that the defendant was not convicted of attempt, conspiracy or some other offense "because the guidelines treat success and failure, conviction and no conviction alike." No

---

12. *See United States v. Marshall*, 908 F.2d 1312, 1331–35 (7th Cir.1990) (Posner, J. dissenting) (questioning rationality of system under which two defendants in possession of an identical amount of a drug may receive vastly different sentences depending on the weight of the medium).

13. The following exchange took place at the sentencing hearing:

Defendant: They came up with this great bargain price and enticed me into it. I usually wouldn't buy that amount unless it was ...
Court: A bargain?
Defendant: Yeah, the price was a bargain.

14. Judge Heaney of the Eighth Circuit noted in his study that the Guidelines have substantially increased the length of time a federal offender can expect to serve. Prior to the implementation of the Guidelines, Judge Heaney notes, 42.4% of all defendants received probation-only sentences. Currently less than 15% of defendants receive straight probation. Gerald W. Heaney, *The Reality of Guidelines Sentencing: No End to Disparity*, 28 Am.Crim.Law.Rev. 161, 183 (1991) (hereinafter *Guidelines Sentencing* ). This is true even though the enabling statute expressly approves the imposition of probation-only sentences for first time offenders who have not been convicted of a crime of violence. 28 U.S.C. § 994(j).

distinction in sentencing may be drawn, according to the Court, between convicted conduct and unconvicted conduct and between completed crimes and unsuccessful attempts.

It is true that the Guidelines, as presently drawn by the Sentencing Commission, seem to treat "success and failure, conviction and no conviction alike," *United States v. White*, 888 F.2d 490, 499 (7th Cir.1989), but this position clearly contravenes the Guidelines' enabling legislation. In 28 U.S.C. § 994(*l*) (1988), Congress does provide for a system that will deal with multiple offenses: § 994(*l*) allows "incremental penalties" for multiple offenses, but limits such penalties to the situation in which a defendant is *"convicted of multiple offenses committed in the same course of conduct."* To this extent Congress provided for a conviction offense sentencing system just as the states have created in similar situations.[15] The statute does not authorize incremental penalties when a defendant is convicted only of a single offense during a time period in which he may also have committed other offenses if he is not charged and convicted for those offenses. Section 994(*l*) is plain and unambiguous. It authorizes the Sentencing Commission only to impose:

> an incremental penalty for each offense in a case in which the defendant is *convicted* of—
>
> (A) multiple offenses committed in the same course of conduct that result in the exercise of ancillary jurisdiction over one or more of the offenses; and
>
> (B) multiple offenses committed at different times.

28 U.S.C. § 994(*l*) (1988) (emphasis added). No language of the Sentencing Reform Act of 1984 allows what the Sentencing Commission and now our Court have done: imposing incremental penalties for *unconvicted* offenses either "in the same course of conduct" or "at different times." The Act repeatedly refers to a "defendant who has been found guilty of an offense." *See, e.g.*, 18 U.S.C. §§ 3552(a), (b) & (c), 3552(b), 3554, 3555, 3556, 3561, 3571, 3581. It does not refer to unconvicted relevant conduct.

The Guidelines should not be read to treat "conviction and no conviction alike" because such a reading exceeds the authority granted in the enabling legislation to either the Sentencing Commission or a court. It contravenes the plain language of the enabling legislation. *See United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986) (starting point for statutory interpretation is the language of the statute itself). *See also Ardestani v. INS*, — U.S. —, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) ("strong presumption" exists that the plain language, using the ordinary meaning of the words, clearly expresses congressional intent). Evidently, the Sentencing Commission does not feel restrained by the express language of § 994(*l*). It has seized its authority to impose incremental penalties in circumstances involving multiple offenses without heeding the language restricting the imposition of such penalties to conduct related to the offense of conviction only.[16]

The Commission takes the superficially appealing position that it is proper to impose incremental penalties for unconvicted conduct because it claims that courts have always done so. Supporters point out that sentencing courts traditionally had unbridled discretion with respect to what information about the defendant would be considered when imposing a sentence. That reasoning is flawed, however, because it does not acknowledge the prosecutor's stake in the outcome or the fundamental distinction between allowing an unbiased court to consider unlimited factors and compelling the court to impose a sentence that reflects information selectively disclosed by the prosecutor. Vesting control over sentencing in an unbiased, objective,

---

15. *See supra* note 3.

16. It is proper to enhance a defendant's sentence for conduct related to the offense of conviction such as role in the offense, degree of planning required, and the defendant's criminal history. The Guidelines already do this, but they go further by also mandating incremental penalties for separate offenses that the prosecution has not and may not be able to prove.

neutral federal judge is completely different from vesting such discretion in the prosecutor, a party to the case. The difference should be obvious, but apparently it is not obvious to the Sentencing Commission.

I can find no legislative history contrary to the language of § 994(*l*) and supporting the proposition that Congress intended to mandate punishment for unindicted or unconvicted offenses as well as convicted offenses. In the absence of clear evidence that Congress intended to augment the penalty a defendant receives for a charged and convicted offense by additional penalties for uncharged conduct, the venerable rule of statutory construction, *expressio unius est exclusio alterius*—*i.e,* "the expression of one [thing] is the exclusion of the other"—counsels against so broad an interpretation. *See generally National Railroad Passenger Corp. v. National Assoc. of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974); *Neuberger v. Commissioner,* 311 U.S. 83, 88, 61 S.Ct. 97, 101, 85 L.Ed. 58 (1940); *Ford v. United States,* 273 U.S. 593, 611–612, 47 S.Ct. 531, 537, 71 L.Ed. 793 (1927). Congress's limitation of the Sentencing Commission's promulgating authority to convicted offenses is explicit. The expression of this Congressional limitation restricts "incremental" sentencing for offenses to "convicted" offenses. *Cf.* Norman Singer, 2A *Sutherland Statutory Construction* § 47.23 (5th ed. 1992). The majority's expansion of the types of conduct permissible for Guidelines sentencing violates this "ancient maxim" of statutory construction, *Passenger Corp.,* 414 U.S. at 458, 94 S.Ct. at 693, and neglects the plain meaning to be assigned to Congress's words so directly expressed in § 994(*l*): only "convicted" multiple offenses will enter into incremental punishment deliberations.

The court's statement in its final footnote that there is "nothing in this section [§ 994(1)] that forecloses taking relevant conduct into account" is strange indeed when the relevant conduct, as here, consists of another unconvicted crime (negotiation to purchase 500 grams). This is the same point Judge Nelson makes in his concurring opinion. Why would Congress have used the words "convicted" offenses if it intended to allow "incremental punishment" for "unconvicted" offenses? That is the question the court simply declines to try to answer. Somehow, if alleged uncharged, unconvicted activity is labeled "relevant conduct" it removes the strictures that Congress placed on "incremental punishment." But we are not told why.

It is bad judicial form simply to refuse to follow the policy expressly stated by Congress, in favor of a contrary policy perpetuated by an administrative agency, especially when that congressional policy is designed to maintain a degree of judicial control over the sentencing process. I do not understand why my sisters and brothers, usually the voices of sweet reason and deference to the majoritarian branch of government, persist in following the Sentencing Commission and the Department of Justice in their defiance of the policy stated expressly in the statute we are interpreting. I understand as a matter of public choice theory of incentives why the Sentencing Commission and the Department of Justice might believe it is in their interest to control the sentencing process. *See* James M. Buchanan & Gordon Tullock, *The Calculus of Consent: Logical Foundations of Constitutional Democracy* (1965). It is certainly in their bureaucratic interest to do so. Congressional appropriations and governmental power depend upon it. But it is not in anyone else's interest to adopt a policy contrary to the one expressed by Congress. It is certainly not in the interest of the judiciary as the "least dangerous branch," and not in the interest of individuals in society who may be wrongly accused by prosecutors whose power has now been so enlarged through our default. The prosecutors now effectively control both the charging system and the sentencing system. And to an ever-increasing extent, the two are one and the same.

What treatment of the "incremental penalty" language of § 994(1) does the Sentencing Commission give in the Guidelines Commentary? It simply never mentions it anywhere, just as it ignores the "purposes

of sentencing" provision of § 3553(a), and the first offender provision of § 994(j), and the drug dependence provision of § 994(d). It ignores it entirely, and simply conflates "success and failure, conviction and no conviction" as though they were identical.

### III.

The Court's holding that the relevant conduct provision of the Sentencing Guidelines creates a system of sentencing "imperatives" also violates the Due Process Clause of the Fifth Amendment. This violation occurs because, at the time the plea must be entered, the defendant receives no notice of the additional crimes for which the court will enhance the defendant's sentence. Only after the plea is already entered will a probation officer compile the convicted and unconvicted crimes for which sentence will be imposed depending on the uncharged, "relevant conduct" information that the prosecutor chooses to disclose to the court through the probation office. Such a system of sentencing places almost exclusive control over the sentence in the prosecutor because the judge now is compelled to base the sentence on uncharged conduct largely provided by the prosecutor. This system effectively removes the judge from any meaningful role in the sentencing process and substitutes the prosecutor for the judge. Such a system—which substitutes the prosecutor for the judge after a plea of guilty is entered and that gives no explicit notice of the crimes for which the defendant will be sentenced before the plea—violates due process. *See United States v. Kikumura*, 918 F.2d 1084, 1119 (3rd Cir.1990) (Rosenn, J., concurring) (reasoning that a defendant's due process rights may be violated by sentencing system that "replaced judicial discretion over sentencing with prosecutorial discretion"); *United States v. Gutierrez*, 908 F.2d 349, 354–55 (8th Cir.1990) (Heaney, J., dissenting) (reasoning that the Guidelines' limitations on a court's traditional sentencing authority "are fundamentally unfair and a violation of due process"). *See also United States v. Roberts*, 726 F.Supp. 1359, 1365–68 (D.D.C.1989), *rev'd sub nom. United States v. Doe*, 934 F.2d 353

(D.C.Cir.1991) (holding that the Guidelines "effect substantial violations of due process" on defendants and are thus unconstitutional due to exercise of "key sentencing responsibility ... not by a judge but by the prosecuting attorney"), and *United States v. Brittman*, 687 F.Supp. 1329, 1355 (E.D.Ark.1988), *aff'd in part*, 872 F.2d 827 (8th Cir.1989) (holding that the sphere of sentencing discretion is "properly judicial in nature" in order to comport with due process requirements).

Notice to the defendant and imposition of sentence by an unbiased judge rather than control by a party litigant are crucial procedural elements of due process. These indispensable elements are now absent from the sentencing system under the Court's holding that the relevant conduct provisions of the Guidelines should be interpreted as treating convicted and unconvicted conduct the same.

### A. Control of Sentence by Prosecutor

The Supreme Court held in *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), that the sentencing process may not be placed under the control of a party in interest to the litigation. In *Tumey* Ohio law placed town mayors in control of criminal prosecution for possession of liquor in violation of prohibition laws. Mayors and their cities were given a personal financial stake in the outcome of these particular cases. The Court held that due process forbids a party in interest from being substituted for the judge in imposing fines and sentences. The Court relied on *Dr. Bonham's Case*, 8 Co.Rep. 114a, 2 Brownl. 255, 77 Eng.Rep. 647 (C.P. 1610), in holding that it "deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." *Tumey*, 273 U.S. at 523, 47 S.Ct. at 441.

*Dr. Bonham's Case* is the fountainhead of the doctrine of judicial review. In that case the defendant was sentenced by the

censors of the Royal College of Physicians, pursuant to a statute, for practicing medicine without a proper license. The statute gave a portion of the fine to the College. Lord Coke as Chief Justice of the Court of Common Pleas of England asserted the right of judicial review of legislative acts and held the law to be invalid.

Likewise, in *Tumey* the Supreme Court held that it violates fundamental principles to allow a party in interest to control the sentencing process. 273 U.S. at 531, 47 S.Ct. at 444. *See also Connally v. Georgia,* 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977) (holding defendants' due process rights to have been violated by a statutory scheme that paid justices of the peace for each search warrant issued); *In re Murchison,* 349 U.S. 133, 139, 75 S.Ct. 623, 629, 99 L.Ed. 942 (1955) (holding due process violated by allowing judge, who had acted as one-person grand jury, to pass sentence on charges stemming from the initial grand jury hearing); and Note, *Procedural Due Process at Judicial Sentencing for Felony,* 81 Harv.L.Rev. 821, 837 (1968). Impartial justice requires no less than visible control of the sentencing process by an impartial participant—heretofore considered to be the role of the judiciary—to comport with traditional notions of due process. The relevant conduct provisions are a disaster for Guidelines that purport to reduce disparity because these provisions impose a disparate sentencing system based on prosecutorial discretion but conceal the prosecutor's role from the public.

## B. *Notice*

Although some effort was made at the arraignment in the instant case to inform the defendant that he might face as much as 51 to 63 months, a sentencing system that institutes punishment for uncharged, unconvicted crimes also violates the notice principle of due process. The prosecutor makes up the crimes for which a sentence will be imposed after the defendant has been required to plead guilty or not guilty, and that was the case here. It is impossible for the defendant to receive notice at the critical stage of the proceeding of the crimes for which he may be sentenced.

The Criminal Rules Committee of the Judicial Conference, in drafting its 1989 amendment to Rule 11 of the Federal Rules of Criminal Procedure, recognized the problem that the Guidelines created in this respect. The Committee noted that under the Guideline system, "[t]he advice that the court is required to give cannot guarantee that a defendant who pleads guilty will not later claim a lack of understanding as to the importance of guidelines at the time of the plea. No advice is likely to serve as a complete protection against post-plea claims of ignorance or confusion." Fed. R.Crim.P. 11 advisory committee's note (1989 amendment). The Committee made this statement because it is impossible for the court to give the defendant notice of the crimes for which he will be sentenced under the guideline system conceived by the Sentencing Commission and approved by our court. According to the procedure now used, a defendant will not be accurately informed of the specific crimes charged against him until after the probation officer's presentence report issues. The indictment and the arraignment merely open the game of defining the crime. *See, e.g., United States v. Harrington,* 947 F.2d 956, 964 (D.C.Cir.1991) (Edwards J., concurring) ("Assistant U.S. Attorneys … have been heard to say, with open candor, that there are many 'games to be played'," in indicting defendants and in plea bargaining). The game will later be played out when the prosecution turns over to the probation officer its handpicked list of the uncharged crimes for which it wants the defendant to be sentenced. The prosecutor's office will draw up the charges for which the defendant will actually be sentenced after indictment, plea, and conviction, and then turn this list over to the court through the probation office. *See generally Report of the Federal Courts Study Committee* at 138 (Apr. 2, 1990) (commenting that this system distorts the role of probation officers and recommending greater examination of the effects of Guidelines sentencing upon the probation system); Note, Steve Y. Koh, *Reestablishing the Federal Judge's Role in Sentencing,* 101 Yale L.J. 1109, 1120–21

(1992) (addressing probation officer's inability to curb prosecutorial gamesmanship in preparing presentencing reports); Heaney, *Guidelines Sentencing*, at 172–75 (noting that "the most striking features of the process are the probation officer's reliance on the government's files for his findings of fact, and, in turn, the court's reliance on the [presentence report's] conclusions and guidelines recommendation," despite the probation officer's inability to attend the trial or to have access to the trial transcript); and Note, 81 Harv.L.Rev. at 837 (recognizing that sentencing information needed by probation officers is frequently under control of prosecutors, "who cannot be expected to be disinterested").

Allowing a defendant to be sentenced in this way for convicted and unconvicted crimes violates the Sixth Amendment provision requiring that the accused be "informed of the nature and cause of the accusation" at the critical stages of the case. Sentencing is just such a critical stage. *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). The requirement that defendants receive fair notice as a matter of due process under the Fifth Amendment and this comparable provision of the Sixth Amendment is fundamental. In *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948), Justice Black wrote for a unanimous Court:

> No principle of due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding, in all courts, state or federal.

The Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), applied these same principles to a state sentencing system. It held the Iowa system of parole revocation invalid under the Due Process Clause. In *Morrissey* the accused was reincarcerated by the state parole board for violating conditions of parole. The parole officer controlled this outcome because the process deferred in large measure to his recommendation and allegations of misconduct. The accused was not given notice of the allegations and evidence against him at the critical stage of the proceeding that led to his reincarceration. In reviewing fairness of such sentencing systems under the Due Process Clause, the Supreme Court in *Morrissey* applied a flexible standard:

> It has been said so often by this Court and others as to not require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by government action."

408 U.S. at 481, 92 S.Ct. at 2600 (citations omitted). Applying this standard, the Court held that the parole revocation system in question violated due process by allowing the parole officer to control the process, although the official action was taken in the name of the state parole board, and by failing to give adequate notice of the nature of the risks to the accused.

In the history of criminal procedure in the United States, I can find no instance heretofore in which a statute, a court, or an administrative agency has stated that a sentencing court may treat "conviction and no conviction alike." This refusal to treat conviction and no conviction alike is firmly rooted not merely in tradition but in the Constitution. When the Constitution refers to sentencing or sanctions for crimes, it refers to "convicted" crimes. We need only look to the language of the Thirteenth Amendment. Amendment XIII, § 1 states that there shall be no "involuntary servitude except as a punishment for crime whereof the party shall have been *duly convicted.*" Involuntary servitude for unconvicted crimes may not "exist within the United States, or any place subject to their jurisdiction" according to the language of the Thirteenth Amendment. *See also* Article I, § 3[6] (impeachments), Article II, § 4 (impeachments), and Article III, § 3 (trea-

son). To hold that the Sentencing Commission may or has validly established a sentencing system for relevant conduct which treats as "irrelevant" the difference between conviction and nonconviction flies in the face of the Constitution.

### IV.

There are obvious and strong reasons for the congressional policy of § 994(l) restricting additional incremental punishment for other crimes to "relevant conduct" for which the defendant has been charged and convicted rather than a policy opening it to unconvicted crimes not charged in the indictment. A contrary policy provides a large incentive and is an open invitation for the prosecutor to manipulate the sentencing process for his own ends after the defendant has pled guilty or is otherwise convicted of a lesser crime. *See Report of the Federal Courts Study Committee* at 138.

Davern is a case in point. Under the Guidelines, the sentence for Davern's offense of conviction ranged from 15–21 months. Davern, however, was sentenced to 51 months—more than three times the minimum for his offense of conviction. Davern received this sentence because the presentence report calculated his offense level to include unconvicted conduct. The defendant in *United States v. White*, 888 F.2d 490, 494, 500 (7th Cir.1990)—the case followed by our Court—fared even worse in this sentencing game. Uncharged, unconvicted conduct increased his sentencing range fivefold—from 27–33 months to 151–188 months.

Allowing the punishment to be exponentially increased over the base offense level for the convicted crime encourages the prosecutor to do what happened here and is happening on a daily basis in the many other relevant conduct cases across the country. The defendant is indicted for a relatively small felony, which the prosecutor then expands greatly by making up a much more detailed and extensive list of criminal charges and forwarding these to the court through the probation office. The prosecutor need not disclose his hand

in the beginning by giving Sixth Amendment notice of the "nature and cause of the accusation" and does not have to "confront [the accused] with the witnesses against him." Nor need the prosecutor observe the constitutional requirement of proving the case by reliable evidence beyond a reasonable doubt or the constitutional prohibition against compulsory self-incrimination.

By dismissing as irrelevant any distinction between "success and failure, conviction and no conviction" under the formulation of the relevant conduct "imperatives," this Court, the Department of Justice, and the Sentencing Commission have eliminated the normal constitutional protections afforded an accused. The separation-of-powers principle that an Article III court should control the criminal sentencing proceeding as a constitutional "case or controversy" is avoided because the court is bound to sentence the defendant on the basis of the information on the crimes forwarded by the prosecutor after the plea or verdict. The sentencing grid takes over and mechanically controls the court's decision. The judge is only the nominal sentencer. Control of the sentence is thereby vested in the person who produces the new crimes information to be plugged into the grid, namely, the prosecutor. The court may not alter the sentence based on pleas of the defendant or even pleas of the victim concerning the need for deterrence and retribution and the probability of rehabilitation. As formulated, the relevant conduct system does not allow the trial judge to consider the first principle of sentencing that Congress established in § 3553(a), that the judge may not impose on the defendant a sentence "greater than necessary" to deter or rehabilitate. Such considerations are eliminated by the sentencing grid. The Fifth Amendment constitutional requirement to give notice to the accused of the crimes charged by "presentment or indictment" is eliminated, as is the Sixth Amendment requirement that the accused be "informed of the nature and cause of the accusation." The prosecutor submits the new crimes information in hearsay form after the plea or verdict. The constitutional and statutory rules requiring reliable

evidence are eliminated, and hearsay three and four levels deep is routinely used as evidence of the new crimes. *See* Heaney, *Guidelines Sentencing,* at 210 & 223–24. The court routinely instructs accused persons to appear before the probation officer, sometimes with the prosecutor or his delegate present, for the purpose of incriminating themselves on the new charges. Thus, the system of relevant conduct as formulated tends to take over the entire sentencing process, displacing the original base offense level for the crime charged and convicted and replacing it with much greater offense levels for the new crimes. This usually has the effect of increasing the sentencing severalfold by placing the system under the control of the prosecutor, by eliminating the judgment of the trial judge, and by eliminating the need for the prosecutor to observe the numerous constitutional safeguards which otherwise attach to the criminal process. The result is a constitutionally infirm procedure that is effectively shielded from judicial review. *See Harrington,* 947 F.2d at 966–67; *Kikumura,* 918 F.2d at 1119; *Gutierrez,* 908 F.2d at 354; *see also* Heaney, *Guidelines Sentencing,* at 190–200.

BOYCE F. MARTIN, Jr., Circuit Judge, dissenting.

I join in Chief Judge Merritt's dissent, and I write further merely to express my personal views that relate to the conflict that I see in this case between the statute prohibiting the possession of a controlled substance, the enabling statute of the Sentencing Guidelines, and the sentence that can be received for possession of the controlled substance.

This case presents issues that are not necessarily restricted to the defendant, John P. Davern; to some extent the issues are societal. The facts of the case are fairly straightforward. Davern, then a 25–year–old college student who was addicted to various drugs including cocaine, believed that he could negotiate the purchase of a quantity of cocaine that he could eventually distribute in the Cleveland area. Needless to say, this country's prohibitions against the possession and/or distribution of drugs such as cocaine are clear and without question. I will let others spend their time debating about how long Davern should be incarcerated for his crime. What I strongly object to is the conflict that develops in this case between the indictment, the constraint expressed by the trial judge, and the total elimination of the trial judge's discretion by the majority of this court.

In a one-count indictment, a federal grand jury levied only the following charge against Davern:

> On or about November 30, 1989 in the Northern District of Ohio, Eastern Division, JOHN P. DAVERN did knowingly, intentionally, and unlawfully possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance; in violation of Title 21, Section 841(a)(1), United States Code.

Davern appeared before the district court and ultimately pled guilty to the charge. Davern possessed no prior criminal record and at the sentencing hearing a determination was made that Davern's sentence would be dependent on the amount of cocaine that he possessed. Here, I struggle with my analysis because of what actually happened in this case rather than what could have happened. If the indictment had charged Davern with possession of the 85 grams of cocaine that were found submerged in the plaster of Paris, and Davern, in turn, was sentenced to 4.25 years in prison for the offense, then I would see little reason for an *en banc* decision. Also, if the indictment had charged Davern with attempting to purchase 500 grams or more of cocaine, and Davern, in turn, was sentenced to 4.25 years in prison for this offense, then once again I would find little difficulty with this case. What strikes me as fundamentally unfair in this case is that nowhere in the indictment is the amount of cocaine mentioned; the indictment merely refers to "a detectable amount of cocaine." The most appropriate way for the grand jury to have proceeded would have been for them to charge Davern with *attempting* to purchase 500 grams or more of cocaine for

$10,500. · If the indictment had been structured in this manner, then Davern could have been sentenced for a crime with which he was charged. However, because the indictment was not structured in this way, the district court has sentenced Davern for a crime with which he was not charged. I just do not believe that Congress intended for a defendant to be sentenced for a crime for which he was not charged. This is why, in my opinion, the Guidelines as applied to Davern were improper, unfair, and contrary to the intent of Congress.

In determining Davern's sentence for his crime, the determinative factor is really how one construes the relevant conduct provision. I agree with Chief Judge Merritt that both the Sentencing Commission and the majority have clearly misconstrued the instructions of Congress. As I said earlier, what troubles me is not that Davern was sentenced to serve 4.25 years in prison; what troubles me is the procedure employed to reach the sentence. In endorsing a broad interpretation of the relevant conduct provisions of the Sentencing Guidelines, the majority has removed the opportunity of the district judge to participate in fashioning any appropriate sentence. Moreover, this broad interpretation of the relevant conduct provision allows the provision to devour the requirement that· a defendant be proven guilty of a crime beyond a reasonable doubt. Under the majority's interpretation, the prosecution can now charge a defendant with a minor drug crime, prove the defendant guilty of that minor crime beyond a reasonable doubt, and then punish the defendant for additional criminal conduct by using a back door labeled "preponderance of the evidence." I realize that this country is in the middle of the so-called "War on Drugs," but we do not make this country a better and safer place by ignoring the fundamental notions of fairness on which this country was founded. The majority has blindly endorsed the Sentencing Commission and totally ignored the enabling statute. Notwithstanding the decisions in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), and *Burns v. United States*, — U.S. —, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), the Supreme Court has never required us to endorse a practice that is clearly not authorized by Congress.

Today's decision has tragically taken from the district judge the little opportunity that remained for him to fashion a sentence that was appropriate for the offense. In this case, we have established a bad precedent that allows a court .to use the Sentencing Guidelines in a fashion that is totally inappropriate. I respectfully dissent.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I join fully in the dissenting opinions of Chief Judge Merritt and Judge Martin. I write separately simply to emphasize my firm belief that this Court errs grievously in its continued insistence that the sentencing guidelines narrowly prescribe the factors a district court may consider in sentencing and, more important, that the Court misinterprets Congress's clear language to the contrary.

As Chief Judge Merritt recounts, Davern was a college student who had a close-knit, supportive family and strong ties to his community. Davern consistently displayed contrition for his crime and appeared committed to conquering his addiction to drugs and alcohol. Although the district court recognized these factors, the court apparently feared that the sentencing guidelines prohibited its relying on them in imposing a sentence outside of the recommended guideline range. This Court's recent precedent, including the majority's decision today, confirms that the district court's fears were well grounded. I suspect that, under this Circuit's interpretation of the guidelines, the district court would similarly have gone astray in considering Davern's personal situation had his life circumstances been less fortunate—if, for instance, Davern had come from a broken home, had only minimal education, and had intended to sell the drugs not to support his habit, but to support his family.

To articulate, in broad, general principles, when and to what degree a defen-

dant's personal characteristics and circumstances should be considered in imposing a just and equitable sentence would surely be a daunting task. It was undoubtedly in part this realization that motivated Congress to instruct the Sentencing Commission, in § 994(e), to promulgate guidelines and policy statements "reflect[ing] the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant." 28 U.S.C. § 994(e) (1988). As Chief Judge Merritt correctly notes, however, this language is a far cry from a wholesale prohibition on the Commission's consideration of such factors. In addition, this statutory directive is expressly directed *solely* to the Sentencing Commission, which is institutionally limited to promulgating comprehensive, generalizable sentencing principals that can be neutrally applied across a diverse range of individuals, crimes, and social contexts without regard to particular defendants.

Sentencing courts, by contrast, which are daily required to impose sentences upon flesh-and-blood individuals, operate under an entirely different set of congressional constraints. Section 3553 of title 18 instructs the sentencing court, without qualification, to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1) (1988). Section 3661 confirms the all-encompassing scope of the district court's inquiry by providing that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (1988). Thus, the statutory

text explicitly reserves to district judges, who have the responsibility of imposing actual sentences on particular defendants, the authority to take into account personal and non-criminal factors in ways that, in Congress's judgment, elude expression as generalizable sentencing directives and which, accordingly, are deemed inappropriate for guideline treatment. *See generally* Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers*, 101 Yale L.J. 1681, 1715–18 (1992) (exploring tension between 28 U.S.C. § 994(e) and 18 U.S.C. §§ 3553(a), 3661).[1] Thus, regardless of whether the Sentencing Commission was correct in its decision not to incorporate these factors into the guidelines, this Court misinterprets the unambiguous language of title 18 in holding that sentencing courts are similarly foreclosed from considering the personal circumstances surrounding the defendant and his or her crime. This Circuit's cramped interpretation of the guidelines thus abrogates the sentencing discretion that Congress clearly intended to leave to district courts.

Congress's attempt to replace a sentencing regime that it viewed as systemically biased in favor of the rich over the poor, in favor of majority groups over minorities, or in favor of the advantaged over the disadvantaged, with a more equitable one is an admirable and worthy goal, one that undoubtedly receives the unqualified support of every judge on this Court. In my opinion, however, the sentencing guidelines, as interpreted by this and many other courts, have had the unfortunate effect of stripping district judges of their ability to consider those human factors that the Sentencing Commission has ignored, yet that are so crucial to humane and just sentencing. This Court should cease appealing to the

---

**1.** Professor Freed, who also serves as coeditor of the *Federal Sentencing Reporter,* finds additional support for sentencing discretion in the language of § 3553(b), which instructs that the court shall impose a sentence in accordance with the sentencing guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not *adequately* taken into consideration by the Sentencing Commission in formulating the guide-

lines." 18 U.S.C. § 3553(b) (1988) (emphasis added). Professor Freed writes that "Congress no doubt delegated the evaluation of 'adequacy' to the sentencing court because it considered the judge to be in the best position to evaluate whether the Commission had sufficiently addressed the aggravating or mitigating circumstance 'to the degree' present in the case." Freed, *supra,* at 1734 (footnote omitted) (quoting 18 U.S.C. § 3553(b)).

text of the guidelines and 28 U.S.C. § 994 as an excuse for divesting sentencing judges of their discretion that seems otherwise so apparent. By doing so, we dehumanize what is and must remain an intensely human process—after all, we are dealing not with machines and equipment, but with human lives. Because I believe that the guidelines sentencing system, as currently interpreted by this Court, fails of its essential purpose and frustrates the will of Congress, I respectfully dissent.